[No. 963.]

## ADA ALLEN, RESPONDENT, v. JAMES REILLY, APPELLANT.

ACTION ON PROMISSORY NOTE—PLEADINGS—AVERMENT "LAWFUL HOLDER," IMMATERIAL.—In an action on a promissory note, the averment in the complaint, that plaintiff " is now the holder and owner of said promissory note," is immaterial.

WHEN CASE MAY BE SET FOR TRIAL.—In the absence of any rule of court to the contrary, a case may be set for trial at any time during the term, if it is at issue upon questions of law or fact, although the suit was not commenced until after the beginning of the term.

CHANGE OF VENUE—BIAS OF JUDGE.—Bias or prejudice on the part of the judge constitutes no legal incapacity to sit on the trial of a cause, and is not sufficient ground to authorize a change of the place of trial.

CONTINUANCE—PRESENCE OF WITNESS AT TRIAL—ERROR CURED.—Where a continuance is asked for, upon the ground of the absence of a material witness, and the witness afterwards appears and testifies upon the trial: *Held*, that the presence of the witness cured the error, if any was committed by the court, in refusing to grant a continuance.

IDEM—NO INJURY.—Defendant moved for a continuance, on the ground that H. Mau, an absent witness, would testify to a payment of five hundred dollars upon the note sued on. The defendant, testifying in his own behalf, declared that he did not consider the payment of this five hundred dollars to be made upon the note. The affidavit of the absent witness was presented by the plaintiff, denying all knowledge about the payment of the five hundred dollars: *Held*, that defendant was not injured by the absence of the witness,

EVIDENCE OF OTHER INDEBTEDNESS.—A payment of five hundred dollars to plaintiff being shown: *Held*, that the court did not err in allowing plaintiff, in rebuttal, to testify to the existence of other indebtedness due from the defendant to the plaintiff at the time of said payment.

MISTAKE IN FAVOR OF APPELLANT.—An appellant can not complain of a mistake in his own favor, as to the amount of interest due on a note.

FORM OF VERDICT—AMOUNT OF INTEREST.—Where the verdict of the jury, although irregular in form, is sufficient to enable the court to understand their intention, and the judgment is entered in accordance therewith, except as to the rate of interest on the note: *Held*, that the court had

the right to allow interest on the amount found due by the jury at the rate expressed in the note.

CONFLICT OF EVIDENCE.—Rule as to weight and conflict of evidence enforced.

INDEMNITY UPON LOST NOTE.—Indemnity is not required in an action upon a lost non-negotiable note.

APPEAL from the District Court of the Sixth Judicial District, White Pine County.

*C. J. Lansing,* for Appellant.

*A. M. Hillhouse,* for Respondent.

By the Court, LEONARD, J.:

It appears from uncontradicted allegations of the complaint in this action, that on the third day of May, 1875, the defendant, for a valuable consideration, at Hamilton, in this state, executed and delivered to plaintiff his certain promissory note in writing, by which he then and there promised, one day after date, to pay plaintiff the sum of one thousand five hundred dollars, gold coin of the United States, with interest thereon at the rate of two and one half per cent. per month, from date until payment.

This action was brought to recover principal and interest. Defendant pleads full payment and satisfaction, and this is the only issue raised by the answer.

Plaintiff alleges in her complaint, that she " is now the holder and owner of said promissory note," and defendant denies that "plaintiff is the *lawful* owner or holder of said note." But the allegation in the complaint just stated was only an averment of a conclusion of law. It was immaterial, and might have been omitted. It was merely a legal conclusion which necessarily followed from the other facts stated in the complaint, and a denial of that averment did not raise a material issue. (*Wedderspoon* v. *Rogers,* 32 Cal. 572; *Poorman* v. *Mills & Co.,* 35 Id. 121; *Fleury* v. *Roget,* 5 Sandf. 646.)

Besides, the defendant only denied that plaintiff was the *lawful* owner or holder, thus admitting that she held and owned it *unlawfully,* evidently upon the theory that it had been paid. We repeat, then, that the only issue was the

one above mentioned. Upon the pleadings, plaintiff would have been entitled to judgment, had not defendant alleged payment, the proof of which he was bound to establish in order to defeat the action. It follows that the court did not err in denying the motion for a nonsuit.

The jury found the following verdict:

"We, the jury in the above-entitled cause, find for the plaintiff in the sum of nine hundred and fifteen dollars, gold coin, with interest on said sum at the rate of (1⅓) one and one third per cent. per month, from the third day of May, 1875, to this date and until paid.

"PATRICK KEOGH, Foreman.
"Dated October 9, 1878.

"We agree to one thousand four hundred and seven dollars and fifty cents.          "PATRICK KEOGH, Foreman."

The court ordered judgment for one thousand four hundred and seven dollars and fifty cents, with interest from date upon nine hundred and fifteen dollars, at the rate of two per cent. per month.

The September term of the district court of White Pine county commenced, according to law, September 2, 1878, and this action was brought September 4. On the ninth of the same month, before the defendant had appeared in the action, the court "Ordered that all cases that come at issue between this date and the seventh of October next be set for trial on said last named day." This case was placed on the court's calendar by the clerk on the fifth day of October, and on the seventh of the same month, the following day was fixed for the time of trial.

When defendant filed his answer, on the thirteenth of September, J. B. Barker, Esq., was his attorney in the case. A few days thereafter Barker went to California on account of sickness, and was absent at the time of trial. On the day fixed for trial, C. J. Lansing, Esq., appeared as defendant's attorney, and was so entered of record. He then moved to set aside the orders setting the case for trial on the seventh and eighth of October, and to reset it for some other day, but upon what grounds the motion was made does

not appear. The entire motion was overruled, and thereby, it is claimed the court erred. We are not aware of any statute which prohibits the setting of cases for trial at any time during the term at which they are commenced, if they are at issue upon questions of law or fact, although not commenced until after the beginning of the term; and if the action of the court in setting the case for trial was inconsistent with its established rules of practice, we are not advised of the fact, and in the absence of any showing to the contrary, we must presume in favor of the regularity of the proceedings, and the correctness of the rulings of the court below.

Defendant then moved for a change of venue, on the ground that he could not have a fair and impartial trial before the judge presiding, because he and defendant had been, and then were, bitter personal enemies. The motion was supported by the defendant's affidavit setting out the facts just stated, but it was denied by the court. The judge was not disqualified under the statute. (Comp. L. 950.) It is held in California that bias or prejudice on the part of the judge, even in a criminal case, constitutes no legal incapacity to sit on the trial of a cause, and is not sufficient ground to authorize a change of the place of trial. (*The People* v. *Williams*, 24 Cal. 33.) And so it was held in a civil case. (*McCauley* v. *Weller*, 12 Id. 523.) This is especially true when a jury finds the facts; for, if a court errs in matters of law, its errors may be corrected as effectually on appeal taken by an enemy as by a friend. Besides, the presumption is, that the *court* will not be influenced by the animosities of the *judge*, if such he has.

But this was a case where it was proper for the court to act upon its own personal knowledge. The judge knew his feelings towards the defendant better than any one else, and he had a right to act upon what he knew. And if it was necessary, in support of the judgment, we would presume that he acted on his own knowledge, that at the time of the trial he had no animosity against the defendant.

(*Tuble Mountain M. Co.* v. *Waller's Defeat M. Co.*, 4 Nev. 222.)

The defendant next filed his affidavit, and moved thereon for a continuance until October 18, 1878. The motion was overruled, and the cause was tried October 8.

It is unnecessary to state the entire contents of the affidavit for continuance. The ground stated was the absence of two witnesses, residents of Eureka county, forty miles from the place of trial, in White Pine county, named William Pardy and Henry Mau.

Defendant stated in his affidavit that he expected to prove, and could prove by Pardy, that "he, defendant, on the twenty-eighth day of March, 1876, had a settlement with plaintiff in full of all demands then existing between them; that the defendant then paid the plaintiff in full the balance that was then due on the said promissory note, and that the plaintiff accepted and received the same in full satisfaction of said note, and that defendant then and there, to wit, at Hamilton, in White Pine county, Nevada, requested and demanded of the plaintiff the said promissory note, and that plaintiff, in the presence of said Pardy, told him, and declared, that she had destroyed the said promissory note, and had burned the same, and that the same was no longer in existence." The statement shows, however, that the desired witness, Pardy, was present in court and testified for the defendant. It appears that on the twenty-eighth of March, 1876, he was agent of the White Pine County Bank, but it is not shown that he had any connection therewith at the time of the trial, or that he had the charge or custody of the books and papers of the bank, or could produce them in court, if they were desired or required. But defendant did not state in his affidavit that the books or papers of the bank were necessary for any purpose, in connection with the testimony of Pardy or otherwise. He did state that, "after the said case was set for trial, he sent a telegram to the said town of Eureka, requesting the said Pardy to come to Hamilton * * * with his books and papers that related to the matters in controversy in this action, and that

said Pardy refused to come to Hamilton, the place at which this action was set for trial."

That was stated, however, only for the purpose of showing diligence. It may be presumed, that at the time the telegram was sent, he thought he wanted the books and papers referred to; but when he made his affidavit he did not say he wanted them, or that they were necessary for his defense, or that he could not safely proceed to trial without them, or that they contained anything of importance to him, or that they were necessary in connection with Pardy's testimony, in order that he might prove by the latter the facts stated in the affidavit. In a word, the court had no reason to think that the defendant wished or required the books and papers of the bank, or that Pardy had access to them or control over them. Nor does it anywhere appear that they were necessary. No objection was made by plaintiff to any question propounded to Pardy as to the affairs of plaintiff and defendant with the bank. He was permitted to testify to what he knew, and it does not appear that he required any books or papers, in order to make his statement full and complete.

Such being the facts, if the court erred, it did so in denying the motion because of the absence of Pardy alone; and his presence as a witness for defendant cured that error, if such it was.

Defendant also stated in his affidavit, that he expected to prove, and could prove by Henry Mau, that "on the fifteenth day of March, 1876, he (defendant) paid plaintiff five hundred dollars, and in part payment of the promissory note described in the complaint."

Should it be admitted that the defendant used reasonable diligence in relation to the desired witness, Mau, and that, from the affidavit, as it was written, the court erred in refusing a continuance, still it is undeniable that the defendant suffered no injury thereby. There are two reasons for this conclusion. When a witness upon the trial, he testified as follows:

"At the time I paid her (plaintiff) the five hundred dollars, March 15, 1878, nothing was said about the note, or

paying it on the note. I said nothing about the note; for I supposed it was burned. I merely gave her the money. * * * I took no receipt from her against the note. * * * None of this money was given to plaintiff as payment upon the note. I did not consider it payment of the note. I merely made her a present * * * of the five hundred dollars."

And in the second place, in the counter affidavit of Henry Mau, used and referred to on motion for a new trial, affiant stated that, he "never informed defendant that he knew, or would testify, that defendant paid to plaintiff five hundred dollars, or any sum of money, on said promissory note, at any time or place; that he had no knowledge whatever that any sum of money was ever, at any time, paid by defendant to plaintiff upon said note." Besides, plaintiff admitted receiving the five hundred dollars, but claimed that it was paid on account of other indebtedness.

From the foregoing, it is too plain for discussion that the absence of Mau was no injury to the defendant. Other facts are disclosed by the record which justify the action of the court, but we deem it unnecessary to advert to them.

Nor did the court err in permitting plaintiff to testify, in rebuttal, that at the time of the conveyance of defendant's interest in the Boston mine; at the time of the payment of five hundred dollars, and at the date of settlement, March 28, 1876, defendant was indebted to her outside of the note, to which indebtedness those payments, as claimed, were intended to apply. The only issue raised by the answer, as before stated, was whether or not the note had been paid. Defendant claimed that certain·moneys, a part of which plaintiff admitted receiving, were paid in satisfaction of the note, or the indebtedness evidenced thereby; while plaintiff insisted that all sums received by her subsequent to execution of the note were intended as payments of other indebtedness then existing.

It is true that defendant testified upon cross-examination that he did not pay the five hundred dollars upon the note, or make the conveyance in part satisfaction thereof; on the contrary, he admitted that nothing was said about the note;

still, his effort at the trial was to apply those sums as part payment of the note, and counsel, in his brief, now claims that the five hundred dollars were paid in part satisfaction of the indebtedness expressed in the note.

Under such circumstances, it was plainly proper for plaintiff to testify that the sums paid subsequent to the execution of the note were not paid or received upon the note, if such was the fact, and to strengthen the probability of the truth of the assertion by showing the existence of other indebtedness to which the payments might have been and were applied.

The jury found a verdict for plaintiff for nine hundred and fifteen dollars, and interest thereon at the rate of one and one third per cent. per month from the date of the note. How they arrived at the conclusion that plaintiff was entitled to that rate of interest only, will probably never be known. If any portion of the note was unpaid, she should have received interest at two and one half per cent. per month upon that amount, because the answer admitted that that was the rate expressed in the note, and testimony to the contrary was inadmissible. Besides, defendant testified that, he thought "the note drew only two per cent. from date until paid."

But at any rate, the jury's mistake was in favor of the defendant, and he can not complain. The whole amount of recovery was not at first expressed in the verdict, as required by section 178 of the Civil Practice Act, and upon motion of plaintiff's attorneys the court resubmitted the case to the jury. Thereupon the same verdict was returned, with the following words added: " We agree to one thousand four hundred and seven dollars and fifty cents," and judgment was entered thereon as before stated.

The court's duty was to resubmit the case, and although the second verdict is, as claimed by counsel for defendant, somewhat irregular as to form, still, there is no difficulty in ascertaining the jury's intention, and the judgment entered is in accordance therewith, except as to the rate of interest, after judgment, upon the principal sum found due; and as to that, the court very properly disregarded the verdict;

because, by statute, plaintiff was entitled to interest upon nine hundred and fifteen dollars, at the rate expressed in the note, and the jury could not take away that right.

The testimony was very conflicting upon the question of payment of the note, and we can not, therefore, disturb the judgment upon the ground that the verdict is not sustained by the evidence upon that point. One other question remains to be considered. It is said that, "the evidence is insufficient to sustain the verdict, and that the verdict is against law, because the note sued on was lost, and no bond of indemnity was offered or given."

The complaint does not contain a copy of the note, and it nowhere appears that it was negotiable, or if negotiable, that it was indorsed by plaintiff. Mr. Hillhouse, attorney for plaintiff, testified that "plaintiff gave him the note sued on, in July or August, 1876; that he lost it; that it was long past due when he received it from plaintiff." It is not shown whether the loss was before or after the action was commenced, although it seems from the complaint that it was after; for it is there alleged that plaintiff was then "the holder and owner" thereof, as before stated, and the complaint is verified.

There is authority for holding that, in an action against the maker of a lost negotiable note, which was past due at the time of the loss, the defendant is not entitled to claim indemnity. (*Thayer* v. *King*, 15 Ohio, 246.) But upon that question we express no opinion.

Indemnity is not required in an action upon a lost *non-negotiable* note. (Story on Prom. Notes, sec. 106; *Wilder* v. *Seelye*, 8 Barb. 409; *Lazell* v. *Lazell*, 12 Vt. 449; *Depew* v. *Wheelan*, 6 Blackf. 485; *Hough* v. *Barton*, 20 Vt. 455; *Rowley* v. *Ball*, 3 Cow. 313; *Blade* v. *Noland*, 12 Wend. 173; *McNair* v. *Gilbert*, 3 Id. 344; *Pintard* v. *Tackington*, 10 Johns. 104.)

Inasmuch as it is not shown affirmatively that the note was negotiable, we will not presume it was of that character. See authorities last cited.

It appearing by stipulation of counsel that the plaintiff, Ada Allen, has died since the commencement of this action,

in pursuance of said stipulation, it is ordered that Katie Riley, administratrix of the estate of Ada Allen, deceased, be and she is hereby substituted as a party plaintiff and respondent herein, and the judgment is affirmed.