[No. 1,007.]

I. B. MARSHALL ET AL., APPELLANTS, *v.* GOLDEN FLEECE G. & S. M. CO. AND T. K. HYMERS ET AL., RESPONDENTS, D. Z. YOST, INTERVENOR.

RIGHTS OF INTERVENOR—ANSWER.—Where the answer to a complaint is treated, upon the trial, as the answer to the petition for intervention, the case will be considered the same as if an answer to the petition had been filed.

IDEM—RELIEF GRANTED.—In such a case defendants can not complain because the relief granted exceeded the demand in the petition, if that which was granted was consistent with the case made, and was embraced within the issue.

RULES OF COURT MUST BE EMBODIED IN STATEMENT.—A rule of the district court relative to the settlement of a statement on motion for a new trial will not be considered by this court unless it is embodied in the statement.

PRESUMPTIONS—REGULARITY OF PROCEEDINGS.—In the absence of evidence to the contrary, every presumption is in favor of the regularity of the proceedings in the court below.

STATEMENT ON MOTION FOR NEW TRIAL—SETTLEMENT OF BY JUDGE OR REFEREE—PRACTICE.—In a case tried before a referee, where all the proceedings are reported to the court, the statement on motion for a new trial may be settled by the judge.

APPEAL—ORDER AMENDING RECORDS—REFUSAL TO DISMISS APPLICATION FOR NEW TRIAL.—An appeal can be taken from an order of court amending its records concerning the extension of time in which to file and serve statement on motion for a new trial and from an order denying a motion to dismiss the application for a new trial.

IDEM—AMENDMENTS DURING TERM.—A court may amend its orders of record concerning the extension of time given to file a statement, so as to conform to the truth, at any time during the term in which they are entered.

NEW TRIAL—RECORDS OF COURT—STATEMENT—TRIAL AND APPELLATE COURT.—The records of the court may be acted upon in the trial court on a motion for a new trial without being inserted in the statement; but, where there is no statement on appeal, the records of the lower court must be designated by the judge as having been read, or referred to, on the hearing, or put in the statement, or they will not be considered by the appellate court.

FINDINGS OF FACT—GENERAL AND SPECIAL VERDICT.—The findings of fact by a court or referee are like the special verdict of a jury; and the conclusions of law drawn therefrom are similar to a general verdict in a case wherein the jury have found a general and special verdict.

JUDGMENT MUST CONFORM TO THE ISSUES.—A judgment must accord with, and be sustained by, the pleadings of the party in whose favor it is rendered, and no court, jury, or referee has any authority to find a fact or draw therefrom a legal conclusion which is outside of the issues.

ACTION AGAINST TRUSTEES OF CORPORATION—SUFFICIENCY OF COMPLAINT—DEMURRER.—Upon a review of the pleadings in an action against the trustees of a corporation for levying unnecessary assessments with intent to defraud the stockholders, and to·have the assessments declared null and void, and for other relief: *Held*, that the demurrer to the complaint was properly overruled; that the complaint stated a cause of action against the personal defendants; and that the corporation was a proper party defendant.

NEW TRIAL—FINDING OR DECISION OF COURT AGAINST LAW—PLEADINGS.—If the decision or finding of a court or referee is against law, a new trial is the proper remedy; the decision is against law if it is contrary to, or inconsistent with, the case made and embraced within the issue.

IDEM—FINDINGS NOT SUPPORTED BY THE PLEADINGS—LEVY OF ASSESSMENTS AND SALE OF STOCK AFTER COMPLAINT IS FILED.—When the complaint was filed, the sale of stock under the thirteenth assessment had not been made and the fourteenth assessment had not been levied. The referee found that these assessments would have been unnecessary if the trustees had faithfully administered the business of the corporation and faithfully used the funds realized by the twelve assessments previously levied, and that since the commencement of the suit the trustees had caused the stock of plaintiffs and intervenor to be sold on the thirteenth and fourteenth assessments. As conclusion of law the referee found that these two assessments were unnecessary; that they were made to defraud the stockholders; that they were fraudulent and void; and that plaintiffs were entitled to have them so declared, and to have the sales made thereunder set aside, etc.: *Held*, that the decision of the referee was not justified by the pleadings, and consequently that it was against law.

IDEM—SALE OF STOCK—WHEN NOT VOID.—If at the time the thirteenth and fourteenth assessments were levied the corporation had no funds, and these assessments were needed for legitimate purposes, the sales made thereunder would not be void for the reason that the trustees had previously misappropriated the funds of the corporation.

IDEM—AMENDMENT OF COMPLAINT AFTER FINDINGS ARE MADE—WHEN NOT ALLOWABLE.—When it is not affirmatively shown that the defendants had reason to believe that the affairs of the corporation, subsequent to the commencement of the action, would be inquired into with the view of arriving at a judicial settlement of the same, or that the case was tried upon that theory: *Held*, that the court, after the findings were made, properly denied plaintiff's application to amend their complaint so that it should conform to the findings of the referee.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are stated in the opinion.

*I. B. Marshall*, for Appellants:

I. The court erred in granting a new trial. No affidavit

or statement was filed within five days after the filing of the notice for a new trial; and the time to file the statement not having been extended by the court or the plaintiffs, the right to move for a new trial was waived. (Sec. 197, 1 Com. Laws, 348; *Easterby* v. *Larco*, 24 Cal. 179; *Leroy* v. *Rassett*, 32 Id. 171; *Campbell* v. *Jones*, 41 Id. 515; *Killip* v. *Empire Mill Co.*, 2 Nev. 34; *State* v. *First National Bank of Nevada*, 4 Id. 358.)

II. The court also erred in granting a new trial for the reason that no statement whatever was settled according to law. It should have been settled by the referee and not by the judge of the court. (1 Comp. L. 1258; Rule 32 of District Court.) As the notice of motion for a new trial was filed and served April 23, 1879, the defendants had up to and including the twenty-eighth of April, 1879, to file their statement or to apply for an extension of time. They omitted to do either, thereby waiving their right to move for a new trial. (*Caney* v. *Silverthorne*, 9 Cal. 67; *Easterby* v. *Larco*, 24 Id. 179; *Leroy* v. *Rassett*, 32 Id. 171; *Campbell* v. *Jones*, 41 Id. 515; *Killip* v. *Empire Mill Co.*, 2 Nev. 34.) When the right to move for a new trial is waived, it can not be restored by an order of the court. (*Hegeler* v. *Henckell*, 27 Cal. 491, 494; *Thompson* v. *Lynch*, 43 Id. 483.) The plaintiffs and intervenor in their proposed amendment to defendants' statement, properly reserved their right to object to the statement, on the ground that it was not filed in due time. (*Cottle* v. *Leitch*, 43 Cal. 321; *Brundage* v. *Adams*, 41 Id. 619; *Quivey* v. *Gambert*, 32 Id. 304.)

III. The orders of the twenty-third of April, 1879, did not extend the time to file notice or statement on motion for new trial. (*B. R. & A. W. & M. Co.* v. *Boles*, 24 Cal. 354; *Ellsassar* v. *Hunter*, 26 Id. 279–282; *Easterby* v. *Larco*, 24 Id. 179; *Jenkins* v. *Frink*, 27 Id. 337; *Hegeler* v. *Henckell*, Id. 491; *Campbell* v. *Jones*, 41 Id. 518; *Thompson* v. *Lynch*, 43 Id. 483; *Shaw* v. *Randall*, 15 Id. 384.)

IV. The court did not have the power to amend the statement on motion for a new trial, after the judge had settled it and certified that it was correct. (*Lobdell* v. *Hall*, 3 Nev. 525.) The motion for a new trial rests entirely upon the

statement made and settled before the motion was heard. (*Quivey* v. *Gambert*, 32 Cal. 307.). Nothing can be recognized by this court as a statement except that which was certified to by the judge on the fifth of July, 1879, as having been allowed by him, and was correct. (*Cosgrove* v. *Johnson*, 30 Cal. 509.)

V. Upon the filing of the referee's report, it became the findings and decision of the court. (1 Comp. L. 189; *Peabody* v. *Phelps*, 9 Cal. 213; *Harris* v. *S. F. S. R.*, 41 Id. 393). And as the findings were not excepted to as defective or otherwise, the judgment can not be reversed on that ground. (1 Comp. L., sec. 2; *Jenkins* v. *Frink*, 30 Cal. 595; *Whitmore* v. *Shiverick*, 3 Nev. 312; *State* v. *Manhattan*, 4 Id. 318; *Warren* v. *Quill*, 9 Id. 259; *Young* v. *Clute*, 12 Id. 31.)

VI. If the facts put in issue and established by the evidence entitle the party to any relief in the power of the court to give, although not that demanded, it is the duty of the court to give it, and its power to do so is not conditioned upon the form of the prayer. (Bliss on Code Pl., sec. 161, 167; *Wood* v. *Brown*, 34 N. Y. 337; *Emery* v. *Pease*, 20 Id. 62; *Henderson* v. *Dicky*, 50 Mo. 161; *Rollins* v. *Forbes*, 10 Cal. 299; *Worrell* v. *Munn*, 38 N. Y. 137.)

VII. The demurrer to the complaint was properly overruled. (*Gale* v. *T. C. Water Co.*, 44 Cal. 43. *Spanagel* v. *Dellinger*, 38 Id. 283; *Heath* v. *Erie R. R. Co.*, 8 Blatch. 347; *Barnstead* v. *Empire M. Co.*, 5 Cal. 299; *Neall* v. *Hill*, 16 Id. 145; *Cogswell* v. *Bull*, 39 Id. 320; *Wright* v. *Oroville M. Co.*, 40 Id. 20; *Parrott* v. *Byers*, 40 Id. 614; Angell & Ames on Corp. 319, 320.)

VIII. The findings of a referee will not be set aside when the evidence is conflicting, or when the testimony of some of the witnesses, if credited, supports the findings. (*Brady* v. *Brown*, 20 Cal. 520; *Keeler* v. *Sutrick*, 22 Id. 471; *Muller* v. *Boggs*, 25 Id. 179; *Peck* v. *Vandenberg*, 30 Id. 11.) If any errors were committed by the referee, they were against and not in favor of the appellants.

IX. If the judgment of the referee is in any manner defective, then this court has full power to direct the entry of

such judgment as equity requires.    (*Fusier* v. *Sneath*, 3 Nev. 120; Comp. L. 1400; *Ord* v. *McKee*, 5 Cal. 516.)

*R. M. Clarke* and *William Cain*, for Respondents:

I. The court had the undoubted right to amend its records during the term the orders were entered, for then the record is in the breast of the judge. (*Swain* v. *Naglee*, 19 Cal. 127; *DeCastro* v. *Richardson*, 25 Id. 49; *Hegeler* v. *Henckell*, 27 Id. 491; *Clark* v. *Strouse*, 11 Nev. 76; *Twist* v. *Kelly*, 11 Id. 377.)

II. The court did not err in refusing to dismiss defendants' application for a new trial "upon the ground" that the statement was not filed and served in time. (*Black* v. *Dean*, Oct. term, 1876, Supreme Court of California, not reported.)

III. The court did not err in refusing to allow plaintiffs to amend their pleadings so as to conform to the findings of the referee. (*Nevada County & S. C. Co.* v. *Kidd*, 37 Cal. 282.)

IV. Plaintiffs are bound by their allegations and prayer for relief, and where the facts alleged in the complaint may constitute two or more different causes of action and authorize different judgments, the prayer becomes significant and may determine the nature of the action. (*N. C. & S. C. Co.* v. *Kidd*, 37 Cal. 304; *Arlington* v. *Liscom*, 34 Id. 375; Story Eq. Pl., secs. 40, 41, 42; 1 Van. San. Pl., p. 360; 1 Comp. L. 1102; Bliss on Code Plead., sec. 164; *Corry* v. *Gaynor*, 21 Ohio St. 277; *Rome Exch. Bank* v. *Eames*, 1 Keyes, 588; *Swan* v. *Smith*, 13 Nev. 257.)

V. The court did not err in granting a new trial. The complaint failed to allege any specific acts of fraud or any particular items plaintiffs intended to rely on. *Castle* v. *Bader*, 23 Cal. 75; *Semple* v. *Hagar*, 27 Id. 166; *Kent* v. *Snyder*, 30 Id. 667; *O. & V. R. R. Co.* v. *Plumas Co.*, 37 Id. 363; *Douglas* v. *Brooks*, 38 Id. 670; *Mandeville* v. *Solomon*, 39 Id. 125.) And it is only for fraud that officers can be sued. 2 Hilliard on Torts, 401–404, and cases; *Arkenburgh* v. *Wood*, 23 Barb. 370; *Neall* v. *Hill*, 16 Cal. 150;

*Peabody* v. *Flint*, 6 Allen, 52.) And plaintiffs must not be guilty of gross laches in prosecuting their claims. (*Fuller* v. *Melrose*, 1 Allen, 166; 2 Story Eq. Jur., sec. 1520, note 3.)

By the Court, Leonard, C. J.:

It is alleged in the complaint, herein, as follows:

The Golden Fleece company, one of the defendants, is, and since January, 1874, has been, a corporation duly incorporated and doing business under the laws of this state, having a capital stock of thirty thousand shares, of the nominal value of ten dollars each. It owns and was incorporated for the purpose of working and developing a certain mine in Washoe county, known as the "Golden Fleece mine."

Since about December 1, 1875, the corporate powers of said corporation have been exercised by a board of trustees, consisting of defendants Gallagher, Hymers, Lippman, Cohn, and D. Lachman, who now own, or claim to own, about twenty thousand shares of its capital stock, and have owned or claimed to own the same since November 16, 1875. Since February —, 1874, the officers of said corporation have been and are defendants Hymers, president; Lippman, secretary, and D. Lachman, treasurer, who have been and are a majority of the board of trustees. Plaintiffs are stockholders and the owners of five thousand shares of capital stock.

On or before November 16, 1874, said corporation, at its assessment sales, became the purchaser of fifteen thousand two hundred shares of its capital stock, by reason of the failure of outside parties to bid in the same and pay the assessment and costs thereon, and the stock so purchased belonged to said corporation, subject to the control of the remaining stockholders, who have never made any legal or equitable disposition thereof.

Between November 10, 1874, and April 10, 1875, the market value of the company's stock was from one dollar to five dollars per share. But notwithstanding its market value, of which the personal defendants had full knowledge, and be-

ing a majority of the trustees, and being the owners, or having the control of a majority of the shares of the capital stock, they entered into a fraudulent conspiracy to defraud the remaining stockholders out of said fifteen thousand two hundred shares so purchased by said corporation at assessment sales; and in pursuance of such conspiracy, while acting as a board of trustees of said company, and at a meeting of said board, on the sixteenth day of November, 1874, did fraudulently and unlawfully appropriate to their own use and benefit thirteen thousand five hundred shares out of said fifteen thousand two hundred shares of stock, and did cause the same to be issued to them in their names without the permission or consent of the remaining stockholders, and in order to make such issue, did fraudulently and unlawfully cancel thirteen thousand five hundred shares of the fifteen thousand two hundred shares so belonging to the stockholders of said company, and ever since have failed and refused, and do still fail and refuse to account to the remaining stockholders for said thirteen thousand five hundred shares or for the market value thereof at the time of such fraudulent appropriation, issue, and cancellation.

On and before November 16, 1874, plaintiff (Marshall) owned, and had standing upon the books of said company, three thousand five hundred shares of its stock, and subsequently, but during the same month, became the owner of eight hundred additional shares, and now owns, in his own name, four thousand one hundred shares, besides one thousand five hundred shares in the name of plaintiff Wilson. Between the time plaintiff Marshall became a stockholder and the commencement of this action eight assessments, aggregating ninety cents per share, were levied by the board of trustees, and prior to that time there had been levied five assessments, aggregating twenty-two cents per share, making in all thirteen assessments, and amounting to one dollar and twelve cents upon each share of the capital stock of said company.

Prior to the commencement of this action (as appears from the company's books) its total receipts from assessments and from the sale of property belonging to it amounted

to over thirty-one thousand dollars in gold coin, while its expenditures did not amount to more than twenty-one thousand dollars, leaving a balance of surplus funds belonging to said company of over ten thousand dollars, beyond its present liabilities.

Between May, 1874, and the commencement of this action defendants Gallagher, Hymers, D. Lachman, and Lippman constituted a majority of the board of trustees, but since about December 10, 1875, said board has consisted of said defendants and defendant Cohn, who, during their terms of office up to the commencement of this action, have had the entire management and control of all the business of said company. Although little, if any, labor has been done on the mine since August 10, 1875, still subsequent to that date, four assessments of ten cents per share each have been levied, three of which have been paid in full by plaintiffs, and the fourth, levied October 11, 1877, upon all of plaintiffs' stock, except three hundred and ten shares belonging to plaintiff Donahue, is now delinquent and is advertised to be sold to pay the delinquent assessment thereon and costs, and will be sold on the twenty-seventh day of December, 1877, unless said sale is restrained by order of this court.

The defendants last above named, constituting said board of trustees, and B. Lachman, since November 16, 1874, have had and now have standing in their names upon the books of the company twenty thousand shares of the capital stock thereof, all of which they claim to own and since said date have controlled. Having had control of a majority of the capital stock they have controlled the election of all the trustees, and have thereby fraudulently conspired to levy and collect fraudulent assessments from the remaining stockholders, and have levied and collected the same. They have fraudulently failed, neglected, and refused to pay the assessments due on the stock so held by them, and have levied such assessments for the purpose of obtaining money from the remaining stockholders, which money they have appropriated to their own uses and purposes; and also for the purpose of obtaining the ownership of the stock of the

remaining stockholders, by purchasing the same at delinquent sale, for the ostensible benefit of the company, and appropriating the same to their own use and benefit.

In pursuance of such unlawful conspiracy, and for such fraudulent purposes, defendants Gallagher, Hymers, Lippman, Cohn, and D. Lachman have levied and caused said last or thirteenth assessment to be levied, for the collection of which, all the stock standing on the books of said company in the names of plaintiffs (except the three hundred and ten shares of the plaintiff Donahue) is advertised to be sold as delinquent on the twenty-seventh day of December, 1877, as aforesaid. During the whole time said Lippman has held the office of secretary, he has failed to keep any cash book showing the receipts and disbursements of said company, with the intent to conceal from the remaining stockholders the fraudulent and unlawful acts hereinbefore set forth; and during the whole time, defendant D. Lachman, with like intent, as treasurer of said company, has failed to keep books of account showing the amount of moneys received by him from or on behalf of said company; such neglect and failure were in direct violation of the by-laws of the company, and were within the full knowledge of all the members of said board of trustees.

Said board of trustees caused said secretary and treasurer to fail and neglect to keep proper books of account, as aforesaid, for the purpose of concealing from the remaining stockholders the unlawful and wicked conspiracy hereinbefore set forth.

The rights and equities, claims and demands of the plaintiffs and the remaining stockholders, and in favor of said company, herein set forth, can not be enforced by suit brought in the name, and in behalf, of said company, for the reason that the control and management thereof is, and since October, 1874, has been wholly in the hands of defendants Gallagher, Hymers, Lippman, D. and B. Lachman, and Cohn, and plaintiffs are wholly unable to procure the bringing of a suit in the name of said company against the defendants above named.

All the misconduct, willful neglect, conspiracy, and

frauds, hereinbefore set forth, of said defendants, have only come to plaintiffs' knowledge within the last thirty days, and this action is brought by plaintiffs against defendants, on behalf of themselves and all other stockholders of said corporation, who may choose to come in and contribute to the costs and expenses of this action.

The thirteenth assessment levied, and under which the stock of plaintiffs is advertised to be sold, as aforesaid, is wholly unnecessary for the purposes of said company, but was levied by said defendants Gallagher, Hymers, Lippman, D. Lachman, and Cohn, for the sole purpose of obtaining the money to be derived therefrom for themselves and for their own uses and benefit.

Wherefore plaintiffs pray that the said defendants be perpetually restrained and enjoined from selling the said stock of plaintiffs as delinquent under the said assessment levied October 11, 1877; that during the pendency of this action, defendants Gallagher, Hymers, Lippman, D. Lachman, and S. Cohn, be restrained and enjoined from acting as trustees of said corporation; that they and B. Lachman be ordered to account for all receipts and expenditures of said corporation during the time they or either of them have had control of the same, and that a referee be appointed to take such account and report the same when ascertained; that all of said defendants last named be ordered to pay over to the said company any and all assessments upon their stock which may be found to be due and unpaid thereon; that upon the said accounting, if any surplus funds, over and above what are required to meet the existing liabilities and necessities of the company remain, the same may be distributed *pro rata* among the *bona fide* stockholders of said company; that said plaintiffs have judgment against defendants Gallagher, Hymers, Lippman, D. and B. Lachman, and S. Cohn, for the market value of one fifth of said thirteen thousand five hundred shares fraudulently appropriated, as aforesaid, by said defendants, to wit, thirteen thousand five hundred dollars, for costs, and for such other and further relief as to the court may seem just, and as equity and the nature of the case may require.

Defendants demurred to the complaint upon two grounds, namely, that there was a misjoinder of parties defendant, and that it did not state facts sufficient to constitute a cause of action. Demurrer was overruled and defendants answered, denying all allegations of fraud; or that they had fraudulently or otherwise appropriated any stock of the company; or levied any assessment or collected or disbursed any money, except for what appeared to them to be for the best interest of the corporation; or that they had not paid their full share of assessments and otherwise borne their proportion of the burdens of the corporation; or that they had taken any advantage of plaintiffs, by reason of owning a majority of the capital stock.

They admit that they are the owners of twenty thousand shares of stock, but deny that on the sixteenth day of November, 1874, the stock of the company had a market value of from one dollar to five dollars per share, or that it then or ever had any regular market value, except such sums as parties desiring to purchase chose to pay for the same.

They deny that on or before November 16, 1874, the corporation had purchased exceeding fourteen thousand six hundred shares, which are admitted to have been sold by orders of the board of trustees, alleged to have been regular and legal, and for a sum alleged to have been a reasonable and fair price therefor.

They admit that the amount of assessments collected before the commencement of this action was thirty-one thousand two hundred and fifty-five dollars, but allege that the expenses of the corporation paid by the board of trustees were thirty-seven thousand nine hundred and ninety-six dollars; that the thirteenth assessment was levied, and the stock advertised to be sold, in order to pay outstanding indebtedness of the company; and that without such sale defendants would suffer great loss and damage.

They also allege that the corporation defendant is, and for a long time has been, engaged in expensive litigation; that it has no other means of raising necessary funds than by levying assessments upon its stock, and if restrained from levying assessments and selling delinquent stock the defend-

ants will be unable to protect the interests of the corporation in said action and be subjected to expensive litigation on behalf of their creditors, and in danger of losing their property.

Subsequently D. Z. Yost filed his petition or complaint as intervenor against the same defendants, claiming to be the owner of fifteen hundred shares of stock, alleging the same facts, substantially, as are stated in plaintiffs' complaint, and praying for the same relief, except as to the amount claimed as his proportion of the market value of the thirteen thousand five hundred shares alleged to have been fraudulently appropriated by the personal defendants. No answer or demurrer to intervenor's petition was filed.

The cause was referred to a referee to take the testimony and report findings and judgment, which was done, and the judgment was entered as the judgment of the court. This appeal is taken from an order granting a new trial; from an order denying plaintiffs' and intervenor's motion to dismiss defendants' motion for new trial; from an order amending the records of the court, and from an order denying plaintiffs' and intervenor's motion to amend their complaints so that they should conform to the findings of the referee. We shall treat the intervenor as one of the plaintiffs, and consider his case the same as though an answer to his petition had been filed. No default was taken by him, and one of defendants' counsel admits in his brief that, the case was tried the same as if an answer had been interposed, and that the answer to the complaint was treated as the answer to the petition of intervention. Such being the case, defendants can not complain because the relief granted exceeded that demanded in the petition, if that which was granted was consistent with the case made and was embraced within the issue.

It is claimed that the court erred in granting a new trial, for many reasons; and first, because there was no statement settled according to law, it having been settled by the judge instead of the referee, who tried the cause. We are referred to no authorities upon this point, and can find none under a statute like ours. If there was a rule of court requiring

the statement to be settled by the referee, as stated by counsel for appellants, we can not know the fact, as the rule is not embodied in the statement.    In the absence of evidence to the contrary, every presumption is in favor of the regularity of the proceedings in the court below.    (*Allen* v. *Riley*, 15 Nev. 452; *Rutherford* v. *Pope*, 15 Md. 581; *Cherry* v. *Baker*, 17 Id. 77; *Scott* v. *Scott*, Id. 78.)

In applications for new trials, the statute provides that, after the statement and amendments thereto have been filed, in case the amendments are not accepted, " either party may have the statement settled by the judge or referee, upon two days' notice thereof to the other party;" and that, " when settled by the judge or referee, it shall be accompanied with his certificate that the same has been allowed by him, and is correct."    (Comp. L., sec. 1258.)

Section 1393 provides that, the statement and amendments on appeal " shall be presented to the judge or referee *who tried or heard the case*," and it is claimed that, the words, "who tried or heard the case," are clearly implied in section 1258.    The sections relating to statements on motion for new trials and those on appeal, are different parts of the same statute; still, they are entirely independent of each other.    The subject-matter differs, and both are complete in themselves.    The legislature has seen fit to declare, in one case, that the statement *may* be settled by the judge *or* referee, and in the other, that it *shall* be settled by the judge or referee who tried the case.    When, as in this case, all the proceedings are reported to the court by the referee, it may be entirely proper for the court to settle the statement.    We can not say the legislature did not intend precisely what the language used imports.    To hold otherwise would necessitate an interpolation of words not required to complete the sense apparently intended, and the result would be judicial legislation.

It is also claimed that a new trial ought not to have been granted, because no statement or affidavit was filed within the statutory period; and this claim involves the questions whether or not the court erred in its order amending the records as hereafter stated, and in its order denying plaint-

iffs' motion to dismiss defendants' application for a new trial, from which orders appeals are taken. In considering these questions, the entire statement on appeal is before us, because the orders mentioned are appealable (*Calderwood* v. *Peyser*, 42 Cal. 114), and, as before stated, appeals are taken therefrom. In fact, the only material matters contained in the statement on appeal, that are not in the statement on motion for new trial, are those appertaining to the amendment of the court's records.

Briefly stated, the facts affecting these questions are these: The judgment was entered April 22, and on the following day plaintiffs filed and served notice of referee's findings and judgment. On the same day defendants filed and served notice of motion for a new trial, and made two motions; and thereupon, as appeared by the clerk's minute book, the court ordered, first, "a stay of execution for five days, for the purpose of allowing defendants to file and serve notice for new trial;" and, second, "that a stay of execution be granted until May 20, 1879, to allow defendants to prepare, file, and serve statement on motion for new trial. On May 12, the court granted until May 30, inclusive, in which to file and serve the statement, and it was filed and served on that day. Plaintiffs filed amendments to the statement, reserving the right to object to it on the ground that it was not filed and served in time; and on July 5, 1879, it was settled by the judge. On August 11, following, plaintiffs moved to dismiss the application for new trial, on the ground just stated; and on the twentieth of August, that motion and the motion for new trial were heard together. At the conclusion of the argument, counsel for defendants "moved the court to amend the record concerning the extension of time in which to file and serve statement, so as to conform to the truth, by showing the order made April 23, was, in fact, an order extending the time to prepare and serve statement on motion for new trial." That motion was verbal. Whereupon the motion to amend the record and the motion for new trial were continued for further hearing until August 30. On August 23 plaintiffs' attorneys were served with written notice of

motion to amend record, but it contained no notice of intention to amend the statement. On the thirtieth of August the court heard testimony in relation to the nature of defendants' motion of April 23, and the order made thereon; and referring to its own recollection and conscience in the matter, said: "The application of defendants' counsel, made on the twenty-third day of April, 1879, was for an extension of time until May 20, 1879, in which to prepare, file, and serve statement on motion for new trial, and the order then made was for such extension of time for said purpose." And it was then ordered by the court that "the record be so amended as to read, ' to extend time to prepare, file, and serve statement on motion for new trial.'"

Without deciding whether it is so in fact, we shall consider the order of April 23, as entered by the clerk, and as put in the statement on motion for new trial, as one not extending the time to file statement, and we shall not stop to inquire whether the record could have been amended if the April term had expired; although there is high authority that it might have been done even in that case. (*Spanagel* v. *Dellinger*, 34 Cal. 481; *Frink* v. *Frink*, 43 N. H. 514.)

There is no doubt that a court may amend its records during the term in which they are entered. Under the statute (1875, 119) the court had power to adjourn or extend the April term over the time fixed by law for the commencement of another term. If it did so, it had authority to amend the record in question. In the absence of any showing to the contrary, we must presume in favor of the regularity of the proceedings and the correctness of the rulings of the court below. We conclude, therefore, that the April term was extended, and that upon the proofs, which were conflicting, and the knowledge and conscience of the court, the record was amended so as to conform to the truth, and that the court had authority so to do.

Second. Was the refusal to dismiss defendants' application for new trial error?

No other reason has been given against the correctness of the court's ruling than this: It is said, "The motion for new trial rests entirely upon the statement made and settled

before the motion is heard; and the order of April 23, as it appears in that statement, shows that the time for filing it was not extended until more than five days after notice of motion for a new trial had been given, and consequently the right to a new trial was waived."

The action of the court in amending the record before granting a new trial being upheld, it follows that the statement was in fact filed and served in time; and, in law, the amended record, by relation, became the record of the court's order from the time it was made. Such being the case, it must be admitted that any objection to the effect that it was not so filed and served is extremely technical, and ought not to prevail, unless the law, or the well-established rule of practice, justifies that result.

The statute in relation to new trials (Comp. L. 1258) provides that, " On the argument reference may also be made to the pleadings, depositions, and documentary evidence on file, testimony taken and written out by a short-hand reporter * * * and the minutes of the court. The statement thus used, in connection with such pleadings * * * and minutes of the court as are read or referred to on the hearing, shall constitute, without further statement, the papers to be used on appeal from the order granting or refusing a new trial. * * * To identify any depositions * * * or minutes of the court, read or referred to on the hearing, it shall be sufficient that the judge designate them as having been read or referred to, in his certificate to be for that purpose by him made thereon." We quote the above for the purpose of showing that certain things specified, and among them the records of the court, may be acted upon in the trial court on a motion for a new trial, without being inserted in the statement, and that the only reason why a subsequent designation by the judge is required is that this court, on appeal from the order granting or denying a new trial, may know upon what the court below based its order. When there is no statement on appeal, the records of the lower court, etc., must be so designated or put in the statement, or this court can not consider them; but when there is a statement on appeal from an order,

there is another method of bringing here the records and papers used on the hearing in the court below. The statute provides that, "On an appeal from an  *  *  * order the appellant shall furnish the court with a copy of *  *  *  the order appealed from, and a copy of the papers used on the hearing in the court below, such copies to be certified by the clerk to be correct."

In this case, by a statement on appeal properly settled by the judge and certified by the clerk, appellants present not only a copy of the amended order, but also copies of all the minutes of the proceedings of the court showing upon what the court below acted in making the amendment, thus producing a record in this court concerning the matters in hand, which imports the same verity as a statement on motion for new trial, accompanied with the same records designated by the judge according to the statute. The court had a right to act upon its own records in making its order. But having amended them without amending the statement, so that it should conform thereto, it was necessary that the facts upon which the court acted should be presented to this court, according to the requirements of the statute. That was done by a statement on appeal from the several orders appealed from. (See dissenting opinion of Mr. Justice Sawyer in *Quivey* v. *Gambert*, 32 Cal. 318–322, and *Spanagel* v. *Dellinger*, 34 Cal. 476.)

It is next urged that the only method of correcting the errors complained of by respondents, and especially those upon which the court below based its order granting a new trial, was by an appeal from the judgment, and that they could not be reached by a motion for new trial. One of the statutory grounds for a new trial is, "Insufficiency of evidence to justify the *verdict* or other *decision*, or that it is against law." One of the grounds stated by respondents in their notice of motion for new trial is, that "the *decision* and *decree* are against law." It is fair to presume that the word "decision," in notice, was used in the sense in which it is used in the statute. It has been decided by the supreme court of California, and, we think, correctly, that "the terms 'verdict and decision,' as used in the statute,

are appositional; that what is predicated of one, is, also, of the other.    There are two kinds of verdict—general and special.    The first finds the law and the facts; the second, the facts alone.    The findings of fact by a court or referee are like the special verdict of a jury; and the conclusions of law drawn therefrom are similar to a general verdict in a case wherein the jury have found a general and special verdict.    It was decided in *Barnes* v. *Sabron,* 10 Nev. 248, that upon an application for new trial, under the statutory ground above stated, the court was authorized to decide whether the findings of fact sustained the judgment, and that its action in that regard could be reviewed by this court on appeal from an order overruling plaintiffs' motion for new trial.    But the precise question there decided does not necessarily arise here, for in this case, if it be admitted that the findings of fact support the judgment, we are still met with this question: Is the decision of a court or referee against law; if its, or his, findings of fact and conclusions of law are outside of the issues raised, or the facts admitted, by the pleadings, when such findings and conclusions are followed by a judgment consistent with them, but inconsistent with the pleadings?    If it is, it is the duty of this court to review the order granting a new trial in this case, as it was the duty of the court below to decide the question there.    That a judgment must accord with, and be sustained by, the pleadings of the party in whose favor it is rendered is common learning; and no court, jury, or referee has any authority to find a fact or draw therefrom a legal conclusion which is outside of the issues.    The statute is decisive of this question without reference to adjudicated cases.    Section 1211 Compiled Laws provides that, "the relief granted to the plaintiff, if there be no answer, shall not exceed that which he shall have demanded in his complaint; but in any other case the court may grant him any relief consistent with the case made by the complaint and embraced within the issue."    Mr. Bliss, in his Code Pleading, says: "The pleader should bear in mind the language of the rule, and that he will not be entitled to any relief that the evidence alone shows him entitled to.    It is

the rule in chancery, not affected by the code, that a party must recover according to the case made by the complaint, or not at all; '*secundum allegata* as well as *probata.*'"

In *Simmons* v. *Hamilton*, vol. 7, No. 23, p. 947, Pacific Coast Law Journal, it is said: "Upon the facts found, whether found by the finding of a court, or the report of a referee, or the special verdict of a jury, the court must decide the law of the facts before ordering judgment; and if its decision is contrary to, or inconsistent with, the pleadings in the case, or is, in any respect, contrary to law, a new trial should be granted." That was an appeal from an order granting a new trial. So, also, was *Martin* v. *Matfield,* 49 Cal. 44. There the appellants, in their notice of intention, put their motion upon the ground of "insufficiency of evidence to justify the *judgment,* and that it is against law." The court said that neither was a statutory ground. Mr. Justice Rhodes said: "The grounds of the motion should have been directed to the *finding.*" * * * "As was stated in passing on the question of the sufficiency of the notice of the motion, this ground is objectionable, because it does not attack the *finding.*" And in *Shepard* v. *McNeil,* 38 Cal. 74, where a new trial was granted "on the ground that the plaintiff has entered a personal judgment against defendants," the court said: "Besides, it is no ground for a new trial of the issues of fact, that the *judgment* is broader than the facts alleged and found would justify. Such an error in no way affected the *findings.* The error occurred in entering the *judgment* subsequent to the *findings.* It did not occur in the course of the trial, but afterward, and it is, therefore, not one of the grounds for a new trial. There is no complaint that the *findings* were incorrect in this particular. The point is not specified in the statement as a ground for new trial. If there was any error in entering the *judgment,* the defendants have their remedy by appeal from the judgment itself on the judgment roll. The order granting a new trial on the ground stated is erroneous."

From the foregoing, as well as upon reason, we conclude that, if the *decision or finding* of a court or referee is against law, a new trial is the proper remedy, and that the

decision *is* against law if it is contrary to, or inconsistent with, the case made and embraced within the issue.

It becomes necessary, then, to examine the complaint in connection with the findings. We agree with counsel for appellants that the demurrer to the complaint was properly overruled. It stated a cause of action against the personal defendants, and under the circumstances alleged, it was proper to make the corporation a party defendant. (*Heath et al.* v. *Erie R. R. Co.*, 8 Blatch. 393 *et seq.*; *Hodges* v. *N. E. Screw Co.*, 1 R. I. 340.)

The complaint was ambiguous and uncertain in many respects, but those faults were waived by failing to demur specially. It is not necessary, therefore, to decide whether or not the question as to the sufficiency of the complaint can be considered except on appeal from the judgment. Nor do we think it necessary to decide whether or not the court was correct in holding, from the structure of the complaint and the character of relief sought, that plaintiffs waived the alleged torts, and that the action as to the thirteen thousand five hundred shares of stock was for its value, ratifying the sale to the defendants.

In the complaint it is alleged that in pursuance of an unlawful conspiracy the personal defendants had levied the thirteenth assessment, for the collection of which plaintiffs' stock was advertised to be sold, and would be sold, if the sale was not restrained. When the complaint was filed the sale had not taken place under that assessment, and the fourteenth was not heard of. No amended or supplemental complaint was filed. As to the last assessment and the sales thereunder the pleadings are silent, and there is no allegation or intimation of fraud in relation thereto.

The stock of plaintiffs and intervenor was bought in under these assessments by the corporation.

Under such pleadings the referee found as facts that, "assessments thirteen and fourteen were wholly unnecessary, had the trustees aforesaid faithfully administered the business of the company and faithfully used the funds realized by the twelve assessments previously levied; and that, since the commencement of this suit, the aforesaid

trustees have caused the stock of plaintiffs and intervenor to be sold on aforesaid thirteenth and fourteenth assessments." There is no finding that the thirteenth and fourteenth assessments were unnecessary, in fact, when they were levied—but only that they would not have been necessary if the trustees had been faithful to their trusts.

As conclusions of law the referee found that, "these two assessments were unnecessary; were made to defraud the stockholders and in order to sell their stock or compel them to pay assessments; that they were only needed because the defendants had failed to pay their assessments on the stock held by them, or otherwise had converted the money so collected to their own use; that the two assessments were fraudulent and void; that plaintiffs were entitled to have them so declared, and all sales thereunder set aside and annulled, and all stock held in said company restored to its owners at the time of, and prior to, any sales under said assessments." The decree was entered accordingly.

It is hardly claimed by counsel for appellants that the issues made by the written pleadings justified the action of the referee; but it is said that the respondents introduced evidence in relation to assessments thirteen and fourteen, and thereby submitted an "implied" issue to the referee upon which it was his duty to find; that they defended the case upon the theory that the averments in the complaint were sufficient to authorize an investigation of the affairs of the company up to and including the sale under assessment fourteen, and that having taken the chances of introducing the evidence under the pleadings, they must abide the result. This theory of pleading finds no support in the statute, in adjudicated cases, or in reason. Pleadings are the formal allegations by the parties of their respective claims or defenses, and in the district court must be in writing: "Every pleading shall be *subscribed* by the party or his attorney." (Comp. L. 1114.) Civil actions are commenced by *filing* a complaint and issuing a summons (Comp. L. 1085); and "the complaint shall contain * * * a statement of the facts constituting the cause of action in ordinary and concise language." (Comp. L. 1102.)

"The court can not, properly, even by consent of parties, pass upon questions not raised by the written allegations of the pleadings." (*Boggs* v. *Merced M. Co.*, 14 Cal. 356; see *Swan* v. *Smith*, 13 Nev. 260; Bliss on Code Pleading, secs. 135, 138.)

It is undoubtedly the law that defective pleadings are sometimes cured by verdict or other decision. In *McAllister* v. *Howell* (42 Ind. 26), no replication was filed to an affirmative answer, and it was held that inasmuch as the cause had been tried without a replication, the answer should be deemed to have been *controverted* on the trial in the same manner as if a replication had been filed.

In *Smith* v. *Burns*, 8 Kan. 201, the court say: "We think the statement in the petition was defective, and should have been held so if it had been attacked at the proper time and in the proper manner. But the objection now comes too late. The petition was not defective because it failed to state some material fact, but it was defective because it stated a material fact in a defective manner. * * * It is a general principle of law that where a material fact is stated in a pleading, but stated defectively, the defect will be cured by a verdict of the jury or a finding of the court." The general doctrine is well stated in *Dickinson* v. *Hays*, 4 Blackf. 45: "The doctrine is now settled that if there is a cause of action stated, although it may be ambiguously, inaccurately, and defectively stated, yet a general verdict cures the defects, because it will be presumed that all circumstances, both in form and substance, necessary to complete the cause of action thus defectively stated, were proved at the trial. But where there is no cause of action stated, as in cases of this kind, if the contract or the consideration be entirely omitted, the omission is not cured, for the party could not be allowed to prove that which he had entirely omitted to state, and therefore no presumption in his favor could arise." (See *Barron* v. *Frink*, 30 Cal. 489.) Here no cause of action was stated, or attempted to be stated in relation to the fourteenth assessment, and as to the thirteenth there were no allegations except as above set forth.

But, aside from the law, it is far from true, judging from the record, that defendants defended the case upon the theory that the complaint was sufficient to authorize an investigation of the affairs of the company up to and including the sale under the fourteenth assessment. On page 110 of the transcript it appears that, "the defendants objected to any examination of the affairs of the company after the filing of complaint December 26, 1877," and thereupon the referee ruled that, "all transactions since filing of complaint will be rejected, except where embodying transactions before suit, and the items afterwards will be considered and treated as surplusage, incidentally connected with matters occurring before suit." No objection was made or exception taken to this ruling, which was undoubtedly correct, under the pleadings. Subsequently (page 379) defendants made the same objection, and a ruling was reserved. Again (page 111), plaintiffs objected to a question for the same reason. Again (page 256), plaintiffs objected to Exhibit L, as incompetent, and that all items in the account subsequent to the commencement of this suit should be disregarded. On page 258 defendants objected to questions upon same ground. It is true that some evidence was admitted concerning matters subsequent to December 26, 1877, but both parties had a right to think it would be considered as stated by the referee at page 111.

From a legal standpoint, what has been said concerning the two assessments, etc., is equally true in relation to the stock alleged to have been fraudulently appropriated. Defendants are charged with appropriating thirteen thousand five hundred shares only, while the referee found that they had appropriated fifteen thousand seven hundred shares, and in addition, had purchased for the company six thousand two hundred and forty shares at delinquent sales, making in all twenty-one thousand nine hundred and forty shares purchased before this suit was brought, while they were only charged with having purchased fifteen thousand two hundred shares. The sale of the entire fifteen thousand seven hundred shares was declared void, and plaintiffs were found entitled to recover the same for the company, except

such shares as had been restored to the company at subsequent delinquent sales.   It was found that plaintiffs' and intervenor's title to six thousand five hundred shares was valid; that five hundred shares standing in the names of defendants on the twenty-first of November, 1874, by valid purchase, should be canceled as the source of title to the five thousand shares, and that all sales or transfers of any portion of said twenty-one thousand nine hundred and forty shares were void.   In the particulars specified, especially, we think the decision of the referee was not justified by the pleadings, and consequently that it is against law.

In this connection it is proper to say also, that we are of opinion the referee erred in declaring the assessment of stock under the thirteenth and fourteenth assessments and sales thereunder invalid, because the trustees had previously misappropriated the funds, admitting that they did so.   It was not disputed that the company had no funds, and that they were needed for legitimate purposes was not denied.   Had the trustees become possessed of the stock in pursuance of a fraudulent conspiracy, equity would not permit them to enjoy their ill-gotten gains.   But the company bought in the stock, and so far as the record shows, held it at the time of the trial.   If the levy and sale were unlawfully made, they might be set aside under proper pleadings, perhaps, but we are unable to see that they were invalid under existing circumstances, because the trustees had previously misappropriated the company's funds, thereby causing the existing necessity.   Had the trustees stolen the funds, the company's necessities would have been as urgent as they would have been if others had committed the theft, without the fault of the trustees.   If other trustees had been elected immediately before the thirteenth assessment was levied, and finding an empty treasury, had levied the thirteenth and fourteenth assessments, and had sold delinquent stock thereunder to the company, in the absence of other purchasers, it would hardly be claimed that the sales would have been void, for the reason that previous trustees had misappropriated the funds of the company. If the trustees did what they are charged with doing, they

are responsible for their malfeasance, but the sales were not void because they supplied funds then required, which would not have been necessary if they had been faithful to their trusts. Finally, did the court err in denying plaintiffs' application to amend their complaint, so that it should conform to the findings of the referee? We are unable to say, and so was the court below, that defendants expected, or had reason to think that, the affairs of the company, subsequent to the commencement of the action, would be inquired into with the view of arriving at a judicial settlement of the same, or that the case was, in fact, tried upon that theory. The contrary plainly appears. Such being the case, it would have been an unwarrantable exercise of power to have permitted the amendment at the time it was asked. For the same reason we can not attempt to settle the rights of the parties from the facts before us, however desirable it may be to do so.

The orders appealed from are affirmed.