[No. 9075. Department Two. December 12, 1910.]

NATIONAL BANK OF COMMERCE OF SEATTLE, *Respondent*, v. PUGET SOUND BISCUIT COMPANY *et al.*, *Appellants*.[1]

CORPORATIONS—REPRESENTATION BY OFFICERS—CONTRACTS—NOTES — AUTHORITY TO EXECUTE — RATIFICATION. A corporation is liable upon its promissory notes executed without express authority of its trustees, where they were signed by the secretary (one of the trustees) with the knowledge and consent of the president, the only other trustee, this was the habitual method of transacting its business, and the notes were used to raise funds to finance the corporation and purchase machinery and equipment.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered June 18, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on promissory notes. Affirmed.

*J. W. A. Nichols*, for appellants.

*Williamson & Williamson, H. F. Norris, Kerr & McCord*, and *E. F. Freeman*, for respondent.

CROW, J.—Action by National Bank of Commerce against The Puget Sound Biscuit Company, a corporation, and its receiver, on six promissory notes, alleged to have been executed and delivered by the defendant corporation to Gawley Foundry & Machine Works, a corporation, and assigned to plaintiff. From a judgment in plaintiff's favor, the defendants have appealed.

The notes for $1,000 each are signed "Puget Sound Biscuit Company, by J. E. Davis, Sec'y." Appellants contend that no authority for their execution by Davis has been shown, and that the corporation business was conducted by two trustees who did not direct the execution and delivery of the notes. The trial court found that on July 24, 1909, the defendant corporation executed the notes, which maturing at different

[1]Reported in 112 Pac. 265.

dates from September 24, 1909, to July 24, 1910, were payable to the order of Gawley Foundry & Machine Works; that on July 29, 1909, the payee, for a valuable consideration, endorsed and delivered them to respondent; that F. Charles Maurmann was president, J. E. Davis was secretary, and F. Charles Maurmann and J. E. Davis were trustees of The Puget Sound Biscuit Company; that J. E. Davis signed the notes with authority of F. Charles Maurmann and himself, the sole trustees; that within a day thereafter the trustees ratified the action of Davis; that respondent had no notice or knowledge of any want of authority in the secretary, or any alleged invalidity of the notes; that Joseph Gawley was an authorized manager of The Puget Sound Biscuit Company, and that the notes were delivered to him to be negotiated.

Appellants contend these findings are not supported by the evidence, but we hold they are, and that they must be approved. Although the business of the appellant corporation was generally conducted in an irregular and informal manner, without keeping complete records, and only one or two meetings of the board were held, it appears from the evidence that Davis as secretary executed these notes with the knowledge and consent of F. Charles Maurmann, the president, and only other trustee, for the express purpose of raising funds with which to finance the corporation, purchase machinery, complete its equipment, and enable it to transact its contemplated business. The respondent does not contend that Davis was necessarily authorized to execute the notes by reason of the simple fact that he was secretary, but does contend that, being secretary, he could be, and in fact was, vested with the ministerial duty of signing the name of the corporation to the notes, which thereupon became valid evidence of its indebtedness. Although it must be conceded that no meeting of the trustees was held, that no formal resolution was adopted requiring Davis as secretary to execute the notes, and that a

corporation usually acts by resolution of its trustees adopted as a board in regular or special session, and not through the trustees acting individually and separately, it has nevertheless been held that, when trustees habitually adopt the practice of giving their separate approval to the acts of agents of their corporation, as appellants' trustees did, such conduct will have the same effect as though evidenced by their formal action at a regular or special meeting.

In *Winer v. Bank of Blytheville*, 89 Ark. 435, 117 S. W. 232, 131 Am. St. 102, the court said:

"It is contended by appellants that there were no minutes or written evidence of the proceedings of the board of directors of the corporation authorizing the transfer of these notes, and that any other testimony as to that was incompetent. But a corporation, its board of directors, and shareholders may waive any necessity of a meeting of its board of directors for the transaction of the business of the company. 'They can do so by permitting the directors to establish a habit or usage of assenting separately to the making and performance of contracts by their agents. By permitting such usages or habits to be formed by a long course of business, they adopt and become bound by them, so long as they acquiesce. If this were not so, great injustice might be done to parties contracting with them in their usual way.' "

This court, applying the same rule in *Anderson v. Wallace Lumber & Mfg. Co.*, 30 Wash. 147, 70 Pac. 247, said:

"The authority of defendant's officers to make the agreement is challenged by defendant chiefly upon the ground that the trustees did not act as an official board, but as individuals only. It appears there were four trustees. Each had knowledge of, and three of them actively participated in, the transaction—the president, vice-president and superintendent, and the secretary. The principle stated in *Carrigan v. Port Crescent Improvement Co.*, 6 Wash. 590, 30 Pac. 148, is applicable here, and is approved, that is, when a corporation allows certain officers to manage its business, particularly, as here, such as president, vice-president, and superintendent, it must be responsible for their acts unless it affirmatively shows they were unauthorized."

This rule is applicable when corporation officers and trustees have indulged in an habitual method of transacting business, individually, separately, by common consent, and without formal action of the board as such. The appellant corporation was regularly organized. Its stock was fully subscribed. It installed a large manufacturing plant with machinery of great value. It manufactured and sold its product, transacting its business for several months. It had at different times two separate managers, who acted for it, directed its affairs, and had knowledge of the execution and negotiation of these notes. It finally became insolvent and passed into the hands of a receiver. After its first organization, no meeting of its board of trustees was held for the transaction of business or to take formal action in regard to any of its affairs. The evidence, although conflicting, is sufficient to sustain the findings of the trial judge. Under the facts shown, the appellants are in no position to now question the authority of the secretary to execute these notes.

The judgment is affirmed.

RUDKIN, C. J., DUNBAR, MORRIS, and CHADWICK, JJ., concur.