[No. 17213.  Department Two.  July 15, 1922.]

W. A. STEEPLE, *Respondent,* v. MAX KUNER COMPANY, *Appellant.*[1]

CORPORATIONS (154)—REPRESENTATION—AUTHORITY OF TRUSTEE—EXECUTION OF NOTES—RATIFICATION.  Where all the stockholders of a corporation, constituting its directors, authorized bonus notes to employees at Christmas time, the corporation cannot defend for want of authority.

SAME (160, 176)—REPRESENTATION—CONTRACTS OF EMPLOYMENT—BONUS FOR SERVICES.  Bonus notes to employees of a corporation, as part of the compensation for extraordinary services performed during the year, are founded upon a sufficient consideration.

SAME (160, 176).  Bonus notes to employees of a corporation cannot be avoided on the theory that they were dependent upon the making of a profit, where the witnesses testified that they were issued as obligations of the company, to be paid regardless of whether there was annually sufficient funds to meet them.

SAME (160, 176)—DIVIDENDS—CONSIDERATION OF NOTES.  Bonus notes to employees of a corporation in consideration of services are not invalid as being in fact dividends to be made only out of net profits.

LOST INSTRUMENTS—ACTION ON NOTE—INDEMNITY.  Judgment upon a lost note is not error, where defendant is protected against the payment by a bond as security in the event of discovery of the note and a second liability.

Appeal from a judgment of the superior court for King county, Sessions, J., entered October 20, 1921,

[1]Reported in 208 Pac. 44.

upon findings in favor of the plaintiff, in an action on promissory notes, tried to the court.   Affirmed.

*Vince H. Faben,* for appellant.

*McClure & McClure,* for respondent.

MACKINTOSH, J.—On January 1, 1920, the appellant executed three promissory notes, each in the sum of $2,000, payable one year after date.   The respondent was a payee of one of the notes and is now assignee of the other two.   This action was brought to recover on these notes, and from a judgment in favor of the respondent, this appeal has been prosecuted.

The appellant is a corporation having five stockholders, who are also the trustees.   The following extracts from the minutes of the stockholders' meetings gives all the facts necessary to be considered in passing upon this appeal.   On September 5, 1918, the following occurred:

"After a discussion of the affairs of the corporation it was decided at the end of the year to present a bonus to the employees who, out of a patriotic spirit, have worked overtime, refusing other than regular time for their services.   A motion to this effect was moved and carried."

On December 27, 1918, at a meeting of the stockholders the minutes show that:

"A ratification was made approving the motion carried in the meeting of the stockholders of September 5th to distribute bonuses at Xmas 1918 to employees who, through a patriotic spirit, have worked overtime refusing to take other than straight time for their services, and after a discussion of the affairs of the company a motion was carried to further distribute bonuses to the amount of Fifteen Thousand ($15,000) dollars as reward for special services among the following:   Max Kuner, A. C. Kuner, P. C. Kauffman, G. E. Thompson, W. A. Steeple.   The above mentioned

employees having through the same aforesaid spirit of patriotism in their capacities of executive, professional, technical and selling abilities worked regardless of all war hindrances, thus bringing the business to its present successful condition. This bonus is to be on the cooperative plan as an inducement to effort, and it has been the intention of the corporation throughout the year to compensate the officers whose salaries have been wholly inadequate, some of them receiving less than the wages paid employees.''

The bonuses called for by this resolution were paid to the three persons named, who were the sole stockholders and were also the trustees, the respondent being one of them, and his assignors being Kauffman and Thompson referred to. On April 30, 1919, the minutes show that:

''The treasurer presented a four months' summary from January 1st to April 30th. A motion was carried that, owing to the uncertain condition of the reconstruction period, in lieu of any raise of salaries, the following employees share a cooperative bonus as per minutes of a special meeting of the stockholders held on December 27th, 1918. A further motion was carried to award bonuses to other faithful employees as per a meeting of the stockholders held on September 5, 1918, except that in both cases the word 'patriotism,' now that the war is over, be changed to 'special services.' ''

The employees referred to in the foregoing minutes were Max Kuner, A. C. Kuner, P. C. Kauffman, G. E. Thompson, and W. A. Steeple.

On December 30, 1919, the following appears in the minutes of a meeting of the stockholders:

''After taking up the discussion of the adjourned meeting, a resolution carried to distribute a cooperative bonus of Ten ($10,000) dollars between the following employees: Max Kuner, A. C. Kuner, P. C. Kauffman, G. E. Thompson and W. A. Steeple, share and share alike, according to a motion carried in a

special meeting of the stockholders held on April 30th, 1919."

It was in conformity with this last resolution that the notes in question were executed. One of the defenses to these notes is that they were executed without proper authorization by the board of trustees, and the case of *Murray v. MacDougall & Southwick,* 88 Wash. 358, 153 Pac. 317, is called to our attention. That case merely holds that, in view of the statutory provision, the board of trustees is the only board which can appoint officers and remove them, and that stockholders have no power to interfere in such a matter. See, also, *Llewellyn v. Aberdeen Brewing Co.,* 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B 667, and *Hewson v. Peterman M'fg Co.,* 76 Wash. 600, 136 Pac. 1158, Ann. Cas. 1915D 346, 51 L. R. A. (N. S.) 398. There is no statute giving the sole power to the board of trustees to execute negotiable paper, and this court has held that an officer of the company who has been in the habit of executing negotiable paper, and whose acts have been ratified by the company, or whose acts have resulted in a benefit which the company has received, may bind the company by such paper. *Seal v. Puget Sound Loan & Inv. Co.,* 5 Wash. 422, 32 Pac. 214; *Tootle v. First National Bank,* 6 Wash. 181, 33 Pac. 345; *Duggan v. Pacific Boom Co.,* 6 Wash. 593, 34 Pac. 157, 36 Am. St. 182; *Miller v. Washington So. R. Co.,* 11 Wash. 414, 39 Pac. 673; *National Bank of Commerce v. Puget Sound Biscuit Co.,.* 61 Wash. 192, 112 Pac. 265; *Fox v. Seattle Contact Copper Co.,* 98 Wash. 557, 168 Pac. 185; and *Kirwin v. Washington Match Co.,* 37 Wash. 285, 79 Pac. 928. But it is not necessary to go to the extent indicated in those cases in order to hold the company liable upon these notes, for, as was said in the case last cited:

"The trustees themselves were stockholders in the corporation and, presumably at least, assented to the ratification by the stockholders."

Here we have a situation where all of the stockholders were all of the trustees, and had the meeting been called a trustees' meeting rather than a stockholders' meeting there would, of course, be no ground for the appellant's contention.

It is next argued that the notes were without consideration. This contention is clearly answered by a reference to the extracts from the minutes which we have already quoted, and which show that the notes were given as part of the compensation for extraordinary services which these persons had performed during the year. The payees were heads of departments of the appellant, and it was for services as such that they were to be compensated. It was not an attempt to pay them as stockholders or trustees. The supreme court of the United States, in *Kenicott v. The Supervisors,* 83 U. S. (16 Wall.) 452, said that a bonus "is not a gift or gratuity, but a sum paid for services, or upon a consideration in addition to or in excess of that which would ordinarily be given." The claim of lack of consideration and that the company received no benefit in exchange for the notes must, therefore, be disposed of adversely to the appellant's contention.

It is suggested that the notes were given with the intention that their payment should be contingent upon the company's making a profit, and that they were not given for past services, but in anticipation of a profitable conduct of the business during the year 1920. The testimony of Mr. and Mrs. Kuner, who own the great majority of the stock in this company, and who were its controlling officers, answers this contention, Mrs. Kuner testifying:

"Q. You always did consider then that these notes were an obligation of the Max Kuner Company? A. They were, but we could not pay them. Q. You think now they are an obligation of the firm? A. Not right now, but I think we can pay them over a term of years . . . Q. But you think when the firm made them the firm obligated itself to pay them? A. We can pay them, but we will have to pay them in small lots and over a number of years. Q. In other words, you think the firm is obligated to pay them? A. Yes; Mr. Kuner signed the notes and we will pay them over the years . . ."

Mr. Kuner testified as follows:

"Q. Why did you execute and deliver those notes? A. Because it was the voice of the company. Q. It was the voice of the company and there was a good consideration for them, wasn't there? A. Well, there was a consideration, certainly there was a certain amount of consideration, yes. Q. And you expected to pay them? A. I expected the company would . . . Q. . . . but as president of the Max Kuner Company when those notes were delivered you expected that those notes would be paid sometime? A. Well, that was the expectation, yes, sir. Q. Certainly. A. —or they would not have been given."

It is next argued that the notes were in fact dividends, and that there being no net profits, dividends could not be declared. What we have already said disposes of this contention, for there was nothing, either in law or fact, to make these notes of the nature of dividends, but they were given, as we have said, in payment for services.

The second cause of action being upon the note given to Thompson, which note had been lost, the appellant claims that the action as to that note could not be maintained. In the judgment entered by the trial court the appellant was protected against the payment on that cause of action by compelling the giving

of a bond to secure the appellant in the event that
the note should at some future time be discovered and
liability sought to be imposed on it a second time. This
was in conformity with the law recognized by the au-
thorities, and as stated in 17 R. C. L., p. 1185:

"Since the only difficulty in the way of permitting
an action at law on a lost negotiable instrument is that
of indemnity, all that is required to entitle the plaintiff
to recover is proof that the defendant can pay the note
without the hazard of being required to pay it a second
time."

The judgment is affirmed.

PARKER, C. J., MAIN, and HOVEY, JJ., concur.