No. 2568

## NEVADA MINING AND EXPLORATION COMPANY *v.* RAE

September 5, 1923.                                        218 Pac. 89.

1. TRUSTS—ALLEGATIONS HELD TO HAVE NO PLACE IN COMPLAINT.

In a suit by corporations to have defendants declared trustees of certain mining claims for benefit of plaintiffs by reason of defendant's failure to carry out their contract to sell plaintiffs' property conveyed to defendants for that purpose, a paragraph in the complaint alleging that C., to facilitate the sale, advanced sums of money to plaintiffs, *held* to have no place in complaint, since, if C. had any grounds for relief, it was against plaintiffs.

2. PLEADING—CODE OF CIVIL PROCEDURE, THOUGH LIBERAL, DOES NOT JUSTIFY AMENDMENT AFTER VERDICT TO ENABLE PARTY TO PLEAD CAUSE OF ACTION OPPOSED TO THEORY OF ORIGINAL COMPLAINT.

Code of civil procedure, though liberal, does not justify an amendment after verdict so as to plead a cause of action diametrically opposed to the theory of the original complaint and that upon which plaintiff proceeds until after the verdict is rendered.

3. PLEADING—AMENDMENTS TO ORIGINAL COMPLAINT HELD TO PRE-
SENT TWO INCONSISTENT THEORIES. ·

Where the original complaint in a suit to have defendants
declared trustees of certain property for benefit of plaintiffs
was based upon the terms of an alleged contract with defen-
dants under which the latter agreed to sell plaintiffs' property
and account to plaintiffs for proceeds, it was error to allow
plaintiffs to file an amended complaint to conform to the
proof charging that defendants procured the contract by fraud
without its having been read by plaintiffs, as the amendment
entirely changed the theory of plaintiffs' case as presented in
the original complaint, or at least incorporated two incon-
sistent theories into the complaint.

4. FRAUD—FRAUD MUST BE CLEARLY PROVED.

Fraud is never presumed, but must be clearly and satis-
factorily established.

5. CONTRACTS—FRAUD NOT SHOWN BY MERE FAILURE OF ONE PARTY
TO READ CONTRACT.

That one party to a contract signs it without reading it
does not establish fraud where he does not testify that its
terms were not explained to him, or that he was misled, and
especially where he does testify that some time after signing
it he read it and was satisfied with its terms, and remained
so satisfied for about six years.

APPEAL from Eighth Judicial District Court, Lyon
County; *T. C. Hart,* Judge.

Suit by the Nevada Mining and Exploration Company
and another against J. H. Rae and others. From judg-
ment for plaintiffs and from an order denying motion
for new trial, defendants appeal. **Judgment and order
reversed, with direction to enter judgment for defen-
dants. Rehearing denied.**

*Leonard B. Fowler, Robert Richards, Mack & Green,*
and *Clark J. Guild,* for Appellants:

Amendment may be allowed after verdict, presenting
issue upon which both sides have introduced evidence;
but amendment after verdict, changing issues so as to
require new trial, should be refused. 31 Cyc. 404;
Huron Dock Co. v. Swart, 24 Ohio C. C. 504.

Where person signs document, he is not permitted to
show he did not know its terms, and in absence of fraud
is bound thereby. It is immaterial that he did not read
and does not know contents. 13 C. J. 277; Gage v.
Phillips, 21 Nev. 150.

One seeking equitable relief where subject-matter

involves highly speculative enterprise must act with diligence. Kinne v. Webb, 49 Fed. 515, affirmed 54 Fed. 34; Gamble v. Silver Peak M. Co., 34 Nev. 432.

Proof of fraud must be clear and convincing, especially in cases where one seeks cancelation of his own written instrument. 9 C. J. 1254. Facts constituting fraud must be specifically alleged. Gruber v. Baker, 20 Nev. 476.

*Platt & Sanford* and *Edward F. Treadwell,* for Respondents:

Where one holding fiduciary relation to another wrongfully mixes his property with property of such other, he must bear full loss occasioned by impossibility of identifying property. Lightner M. Co. v. Lane, 161 Cal. 689.

The case is strictly in equity and verdict of jury is only advisory; therefore error in instructions is not ground for reversal. Johnson v. Rosaschi, 44 Nev. 394. Same rule applies to amendments to pleadings. The changes made removed only immaterial variances. Rev. Laws, 5080; Miller v. Thompson, 40 Nev. 39.

Until decision, amendment is proper to conform to proof. McCausland v. Ralston, 12 Nev. 195. So long as it is not entirely foreign and arises from same general state of facts, amendment is proper. Cox v. McLaughlin, 76 Cal. 60.

Entering into contract without any intention of performing it, especially where confidential relation exists, constitutes fraud. 13 C. J. 386; 13 Cyc. 487; Old Colony Trust Co. v. Dubuque & Co., 89 Fed. 794.

Where fraud is charged, a person may prove that he did or did not read instrument. 13 C. J. 387; Lamb v. Lamb, 30 N. E. 36.

Considerable indulgence should be shown for lack of diligence where confidential relation exists. 16 Cyc. 176; Wilson v. Wilson, 23 Nev. 267.

By the Court, COLEMAN, J.:

This is an appeal from an order denying a motion for a new trial, and from the judgment rendered in favor

of the plaintiffs in a suit instituted for the purpose of having the defendants declared trustees of certain mining claims for the use and benefit of the plaintiffs. A demurrer to the original complaint urging numerous grounds therefor, and a motion to strike certain portions thereof, were filed, which being overruled, the defendants filed their answer. A reply having been filed, the case came on for trial before a jury as advisory to the court upon questions of fact. After the jury had brought in a general verdict in favor of the plaintiffs, an application was made to the court for leave to file an amended complaint to conform to the evidence, which was granted over the strenuous objections of the defendants. An answer to the amended complaint was filed, after which there was a reply denying the affirmative matter alleged in the answer. Subsequently the court rendered a judgment and decree in favor of the plaintiffs as prayed.

It is alleged in the original complaint, inter alia, that at a given time M. Cohn and J. H. Rae were each the owners of an undivided one-half interest in the mining ground in question; that for some years they were engaged as copartners in holding, developing, and perfecting the title to said property; that on April 1, 1902, for the purpose of more conveniently handling and operating said property, said Cohn and Rae caused to be organized the Nevada Mining and Exploration Corporation, one of the plaintiff corporations, and caused to be conveyed thereto the mining claims referred to, and that thereafter, and on or about March 16, 1906, said Cohn and Rae caused to be incorporated the Virginia and Tonopah Gold Dredging Company, and caused to be conveyed thereto a portion of the property in question, and that said Cohn and Rae were at all times the owners of all of the stock in said corporations; that thereafter the plaintiff corporations performed assessment work upon and developed said mining claims, and that said Cohn expended and advanced to said plaintiffs large sums of money for the purpose mentioned. It is further alleged that on or about January 29, 1913, the

defendant Rae represented to said plaintiffs that there was an opportunity to make an advantageous sale of said property, and that he desired to have a deed of the property made to him by the plaintiffs in order that he might consummate such sale, and that it was agreed between plaintiffs and said Rae that he might sell said property for $40,000, whereupon a deed was made and executed by plaintiffs conveying said property to defendant Rae, to be delivered upon payment of said sum. It is further alleged that said sale was not consummated, and that, on or about November 11, 1914, another agreement was entered into. We quote from the complaint as follows:

" * * * An agreement was entered into between the said plaintiffs and said defendant J. H. Rae to the effect that said deed should be delivered to the said J. H. Rae, and that the said J. H. Rae should form a corporation for the purpose of taking over, operating, and developing said property, the stock in which should be issued to the said J. H. Rae, and that either the said property or the stock in the corporation so to be formed should be sold, and that, upon the consummation of said sale, the said sum of $40,000 should be paid to the plaintiffs. It was further provided by said agreement that, if the sale was consummated by the sale of the stock in the corporation so to be formed, the said $40,000 should be paid from the proceeds of sale thereof, and, if consummated by the sale of property, the same should be distributed in the form of dividends to said J. H. Rae, and by him paid to said corporations plaintiff; that the agreement to transfer the said property to said J. H. Rae and to the corporation so to be formed was solely for the purpose of conveniently handling and disposing of said property and without any intention of changing the beneficial interests of the said plaintiffs in said property."

It is further averred that no consideration was paid for said property by Rae; that immediately after the delivery of said deed to Rae, he had the same recorded; that at the time of said transaction plaintiffs had entire

and complete confidence in the said Rae and the representations made by him, and believed that the said Rae entered into the same in good faith in order to consummate the contemplated sale, and that plaintiffs at all times believed that Rae had formed a corporation to hold said property in accordance with said agreement, and that such corporation so formed was holding said property until the sale thereof, and that said Rae or said corporation was holding the stock thereof, and was endeavoring to consummate a sale of said property either by the sale of the same or by a sale of the stock in bulk, for the sum of $40,000 net, to the plaintiffs, and that they so continued to believe until the year 1920.

It is further averred that the said Rae did not incorporate nor cause to be incorporated a company for the purpose of taking over, operating and developing the said mining property, but, on the contrary, on or about November 16, 1914, he caused to be incorporated a corporation known as the Rae Consolidated Gold Dredging Company, with which are certain ones going to the refusal of the court to strike certain portions of the complaint.

1.  Paragraph V of the complaint reads:

"Thereafter the said plaintiffs continued to develop said properties and to do the assessment work thereon, and to perfect their title thereto, the said Morris Cohn expending and advancing to said corporations large sums of money for the purpose aforesaid."

It is clear that this paragraph has no place in the complaint. This is a suit by two corporations, and not one in which Morris Cohn is a party plaintiff. Furthermore, it appears that the advances made by Cohn were made to the plaintiffs in the action, and, if he had any ground of relief on account of the advances, it is clearly against the plaintiffs, and not against the defendants, or any of them. However, pursuant to the paragraph mentioned, evidence was introduced showing large advances by Cohn. Such testimony, under the terms of the paragraph mentioned and the pleadings

generally, could have served no other purpose than to confuse the court and jury.

2. We next come to the contention that the trial court erred in permitting plaintiffs to file an amended complaint. Counsel for respondents contend that the amendments were to conform to the proof. In this we cannot agree. We have quoted from the original complaint the allegations charging the execution of a contract between the plaintiffs and J. H. Rae on November 11, 1914. The plaintiffs, instead of repudiating that contract in the original complaint, sought to establish its terms as the basis of their right of action. The complaint charges that the plaintiffs at all times believed that Rae entered into said contract in good faith in order to consummate the sale of said property. Such were the solemn allegations of the complaint, duly sworn to by M. Cohn after he had had possession of the written contract for over six years. The plaintiffs conducted the trial in accordance with the theory presented in the original complaint. Mr. Cohn did not testify on direct examination, nor did plaintiffs seek to show that he did not read the contract or fully understand its terms. His testimony to the effect that he did not read the contract was given under cross-examination. The entire manner of conducting the case by plaintiffs, until after the verdict of the jury, shows that they were relying upon the theory presented in the original complaint. There is not a word or a line in the complaint indicating that plaintiffs sought to charge fraud, unless it be that Rae entered into the contract without intention to fulfil it, and this allegation, interpreted in the light of plaintiffs' attitude in the case from the beginning to the time leave was sought to file the amended complaint, indicates that the plaintiffs entered into the contract understanding its terms, but that, while Rae understood its terms, he never contemplated abiding by them, and had in fact not carried out the terms of the contract.

The amended complaint charged that Rae falsely and

fraudulently, and for the purpose of depriving the plaintiffs of said property and of acquiring the same for his own use, represented to the plaintiffs that he (Rae) intended to make a sale of said properties, and thereby prevailed upon said plaintiffs to deliver the deed to said property to him, and that, pursuant to representations so made by Rae, the contract in question was executed without its having been read, and that it does not in fact embody the real terms agreed upon.

We are of the opinion that the court should not have made an order permitting the filing of the amended complaint. Our code of civil procedure is quite liberal as to amendments, but there is nothing therein which justifies an amendment after verdict so as to plead a cause of action diametrically opposed to the theory of the original complaint and that upon which the plaintiff proceeds until after the verdict of the jury is rendered. This court, in Marshall v. Golden Fleece M. Co., 16 Nev. 156, 180, in passing upon the refusal of the trial court to permit an amendment changing the theory of a party, said:

"We are unable to say, and so was the court below, that defendants expected, or had reason to think, that the affairs of the company, subsequent to the commencement of the action, would be inquired into with the view of arriving at a judicial settlement of the same, or that the case was, in fact, tried upon that theory. The contrary plainly appears. Such being the case, it would have been an unwarrantable exercise of power to have permitted the amendment at the time it was asked."

While the facts in that case are very dissimilar from those in the instant one, it clearly appears from the quotation that the court held that the defendant had no reason to anticipate, from the nature of the pleadings, that the case would be tried upon the theory sought to be presented by the amendment, or that it was so tried, but that it clearly appeared that it was not tried upon that theory, and, such being the case, it would "have been an unwarrantable exercise of power" for the court to have allowed the amendment. While the

rule thus adopted by the court is contrary to that prevailing in California (Bradley v. Parker, 34 Pac. 234), it is in accord with the great weight of authority, and what seems to be the safer rule. In Foste v. Standard L. & A. Ins. Co., 26 Or. 449, 38 Pac. 617, it is said:

"Courts should be liberal in allowing amendments, and when the cause of action is improperly set forth in the complaint, or a pleading is defective in any respect, the court may, in its discretion, at any stage of the case before the cause is submitted, authorize such amendments as may be necessary to make the case as intended by the original pleading, but not to insert a new and distinct cause of action or defense. Ford v. Ford, 53 Barb. 525; Davis v. Railroad Co., 110 N. Y. 646; 17 N. E. 733; Baldock v. Atwood, 21 Or. 79, 26 Pac. 1058."

See, also, Barnes v. Quigley, 59 N. Y. 265; Clark v. St. Louis T. R. Co., 127 Mo. 255, 30 S. W. 121; Anderson v. Groesbeck, 26 Colo. 3, 55 Pac. 1086; 1 Stand. Ency. Proc. 919; 1 Ency. Pl. & Pr. 584–586; Grand Cent. M. Co. v. Mammoth M. Co., 29 Utah, 490, 83 Pac. 648, 685.

3. It is contended that the amendments presented by the amended complaint are only formal, and made to conform to the proof, and that defendants were in no way prejudiced, as they might have presented such further material evidence as may have been available. It is very likely that the trial court in allowing the amendments accepted this view. We have pointed out that the amendments are not merely formal. They entirely change the theory of the plaintiffs as presented in the original complaint. At least, if they do not do this, they incorporate into the complaint an entirely different theory, thereby presenting two theories as a basis for recovery, and theories, too, which are inconsistent, both of which cannot be true. Such amendments could but be confusing. Clear-cut, well-defined issues should be presented by the pleadings. They are essential in every system of pleading, and there can be no orderly administration of justice without them, and, if a party can allege one cause of action, and then recover upon another, or if his complaint can be so drawn that it

will be difficult to determine which of two apparent theories he proceeds upon, it can serve the purpose only to ensnare and mislead the adversary. Christensen v. Duborg, 38 Nev. 404, 150 Pac. 306.

4, 5. We think there is another reason why the evidence does not justify the amendment. While Cohn swore he did not read the contract, he did not testify that its terms were not explained to him, or that he was misled. Besides, he testified that several months after it was signed he read it and was satisfied with its terms, and remained so satisfied for about six years, during which time the defendant company spent many thousands of dollars upon the property. Fraud is never presumed and must be clearly and satisfactorily estab-. lished. Gruber v. Baker, 20 Nev. 476, 23 Pac. 859, 9 L. R. A. 302. There is no such testimony in this case.

While we have deemed it proper to dispose of the foregoing questions, we are clearly of the opinion that there is no competent and relevant evidence in the record to establish fraud upon either of the theories suggested by the pleadings.

For the reasons given, the judgment and order are reversed, and the trial court is directed to enter judgment in favor of the defendants.

## On Petition for Rehearing

March 5, 1924.                         223 Pac. 825.

1. CANCELATION OF INSTRUMENTS — REAL CONTRACT MUST BE PLEADED IN ACTION TO RESCIND CONTRACT.
    In an action to rescind a contract, the real contract entered into must be pleaded.

2. CONTRACTS—ORAL NEGOTIATIONS EMBODIED IN WRITING..
    Generally when parties have committed their agreements to writing all oral negotiations and stipulations are embodied in the writing itself.

3. MINES AND MINERALS—EVIDENCE HELD NOT TO PROVE THAT CONTRACT CONVEYING MINING CLAIMS WAS PROCURED BY FRAUD.
    Evidence held insufficient to prove that contract conveying mining claims, providing for incorporation by grantee of a corporation for the development of the mines, was procured by fraud in that grantee did not intend to comply with its terms at the time it was executed.

On petition for rehearing.  **Petition denied.**

*Platt & Sanford* and *Edward F. Treadwell*, for Petitioners:

If original complaint alleged fraud, even though defectively, amendment alleging it correctly was proper. Stewart v. Spaulding, 72 Cal. 267.

It is sufficient if a complaint states facts from which fraud is necessarily implied. 9 Ency. Pl. & Pr. 686. Allegation of fraudulent intent is not necessary. Idem, 696.

Marshall v. Golden Fleece M. Co., 16 Nev. 156, cited by court, does not apply because amendment was made before findings and because this case was tried on theory of fraud and parties had reason to believe and did believe fraud was basis of original complaint.

Any defect in allegation of fraud is waived unless made when evidence is offered. 9 Ency. Pl. & Pr. 697.

Original complaint charged contract was entered into without any intention of performing it, while amended complaint alleged fraud in obtaining it — simply a broader allegation of fraud—and there is no inconsistency. We had right to allege every ground we had, and could not split cause of action.

The alleged fraud consisted of false representations of purpose of conveyance, and was clearly proved. Court will overrule verdict of jury where there is total lack of substantial evidence to sustain it. O'Banion v. Simpson, 44 Nev. 190.

If Rae acquired advantages by taking advantage of confidential relation he holds property in trust. Beckwith v. Sheldon (Cal.), 97 Pac. 867; 2 C. J. 692–695.

We are at least entitled to lien on property and cash now in court received from minerals, under general rule of equity. Beckwith v. Sheldon, supra.

*Leonard B. Fowler, Robert Richards, Mack & Green* and *Clark J. Guild*, for Appellants:

Transfer of property to corporation ends partnership relation, joint ownership, or joint adventure, if any ever existed. 20 R. C. L. 954.

The written contract embodied consummation of all negotiations.

Statement that Rae entered into contract without intention of performing it is not supported by evidence.

Petitioners entirely reverse their position as to alleged deception. They say they did not complain that contract was not explained to Cohn, but that it was falsely explained. It was argued at trial Cohn had not read contract. Having served its purpose, that position is abandoned here.

Representations of future expected event cannot sustain allegation of fraud or breach of contract. 12 R. C. L. 244.

The whole case falls upon counsels' own theory, because complaint failed to state the cause of action.

Rae performed contract as fully as he could, and property was disposed of by lease before suit was begun. Cancelation was not justified when contract had been acted upon for seven years.

While admitting contract was repudiated by corporations they obdurately insist it was repudiated by Rae, who has performed it.

In Beckwith v. Sheldon, cited by counsel, on second appeal court expressly held a contract cannot be rescinded where rights of others have intervened. 131 Pac. 1049. In third appeal that decision was affirmed. 145 Pac. 97.

By the Court, COLEMAN, J.:

Counsel for respondents have filed a 52-page printed petition for a rehearing. In the petition we find this statement:

"In form this is a suit in the name of two corporations, because the joint adventurers, under the pleadings, evidence, and findings, placed title to the property in the corporations for convenience of management. Rae acquired the property from those corporations, and, it is claimed, by fraud. The corporations, however, consisted only of Rae and Cohn. The fraud in fact was practiced on Cohn, as he was acting for the corporation.

Rae could not act for the corporation because he claims he was buying the property from the corporation. Cohn, therefore, alone represented the corporation. In connection with the claim of fraud the existence of a confidential relation between the parties was highly important. The confidential relation grew out of the partnership of two men in this venture, their equal joint ownership, and their mutual contributions to the venture. The allegation of the previous ownership by Cohn and Rae, the joint handling of the property, and the contributions to it by them or either of them was all proper for the purpose of showing these relations.

"Defendants in their answer denied the interest of Cohn at the time of the transactions complained of, claimed that his interest was entirely different and arose at a much later date, and that the only interest he had was under a contract of 1913, which it was alleged he had not fulfilled.

"In order to prove this ownership and relationship we introduced the letter from the defendant, and, furthermore, the payment of these sums of money, aggregating about $10,000, by Cohn, which was the strongest kind of evidence of such ownership during the entire period. Even if there had been no allegation of the payment, the same evidence would have been material for the purpose of proving the ownership of Cohn and Rae and the relationship of the parties.

"The evidence did not confuse either the court or jury, but it did serve to show that the sworn answer by Rae denying the joint ownership of this property by Cohn and Rae was false. The allegation was not made for the purpose of making any claim against any one for the advances, but for the purpose of showing the relationship of the two real actors in this matter. That this relationship was vital and materially affected both the allegation and proof of fraud is well settled, as we will point out when discussing that subject."

The trouble with the foregoing statement is one which inheres in the entire case of the plaintiffs from start to finish. Either Cohn is the real party in interest in this

case or the plaintiff corporations are. On the face of the pleadings the corporations are the parties in interest, and hence they are properly the parties plaintiff. Rev. Laws, 4986.

There are no more learned, sagacious, and skilful members of the bar than counsel for respondents. They are such all-round men from the standpoint of qualifications for the bar that at the conclusion of the oral argument we were not only convinced of the correctness of their contention but of the righteousness of the judgment, and it was only after unusual study of the record and the briefs that we were willing to abandon the conclusion then reached. And here we may say with propriety that, if there be any merit in the matter which we have quoted from the petition, it is hard for us to reconcile it with the action taken at a meeting of the board of trustees of the plaintiff corporations at which this suit was authorized at the expense of the plaintiff corporations. If Cohn is the real party plaintiff in the action, why did he not bring the suit in his own name and at his own expense rather than at the expense of the plaintiff corporations? Furthermore, how can we reconcile the contention made with the allegation in the complaint, quoted in the former opinion, to the effect that plaintiffs continued to develop the properties and to do assessment work thereon and to perfect their title thereto, and that Cohn advanced to said plaintiffs large sums of money for the purposes mentioned?

In writing our former opinion we pointed out that Cohn is not a party plaintiff, and that his personal rights were not involved in this litigation, and it was upon that ground that we took the position that the pleadings and evidence affecting him personally were improperly in the case. There is no question but that Rae and Cohn originally owned jointly the bulk of the property in question; that they conveyed their entire interest therein to the plaintiff corporations. Nowhere in the pleadings or in the evidence is there a suggestion that the conveyances by Cohn and Rae to the plaintiff

corporations should be set aside. Then, why should the personality of Cohn be thrust into the case? He has no place in it, and the evidence pertaining to his personal interest in the property and his expenditures before these defendants acquired the title thereto could serve no purpose save to confuse the trial jury and court. If Cohn has any rights in the property as an individual he is the proper party plaintiff in an action to assert them, under the statute cited, and if he has a claim for advances made to the plaintiff corporations he has his remedy.

We will now take up the contention that our conclusions as to the bringing into the case, by the amendment, of a new cause of action or a new theory, were not justified. In this connection it is said in the petition:

"The original complaint, of course, alleged the contract and conveyance, because that is necessary in any action to rescind. It also alleged the representations made as to the purpose of the contract and conveyance; that no consideration was paid for it; that plaintiff believed the representations; that the contract had not been performed; that the advantages were acquired by breach of confidence; that the contract has been abandoned by defendants; that defendant entered into the contract without any intention of performing it; that said plaintiffs, upon learning the facts above set forth on or about the 9th day of May, 1920, proceeded to and did rescind and annul the said contract by reason of the things herein set forth, and notified the defendants of such rescission, and also notified them that the said contract was void and without any consideration, and had long since expired by the abandonment of said contemplated sale and by the nonperformance thereof by the defendants."

In order that we may test the correctness of this statement, we quote the written contract as it was executed. It reads:

"This agreement, made in duplicate and entered into this 11th day of November, 1914, by and between the

Nevada Mining and Exploration Company, a corporation under the laws of the State of Nevada, and the Virginia Tonopah Gold Dredging Company, a corporation under the laws of the State of Arizona, both of said corporations acting by and through its respective president and duly authorized officer, Morris Cohn, of the town of Tonopah, county of Nye, State of Nevada, hereinafter known as grantors, and J. H. Rae, of the town of Dayton, county of Lyon, State of Nevada, hereinafter known as grantee, witnesseth:

"Whereas, the grantors are the owners of certain placer mining ground situated in Lyon County, State of Nevada; and

"Whereas, the said grantors heretofore, to wit, on the 29th day of January, 1913, made and executed a good and sufficient deed to said placer mining ground in favor of grantee herein, the said deed to be delivered unto said grantee upon the payment of the sum of forty thousand dollars; and

"Whereas, said sum of forty thousand dollars has not been paid; and

"Whereas, said grantee is desirous of purchasing said placer mining ground and securing the title thereto by delivery to him of said deed heretofore made and executed in his favor:

"Now, therefore, the said grantors, for and in consideration of one ($1) dollar and other good and valuable consideration, do by these presents sell, assign, transfer, convey and set over unto the said grantee, all right, title and interest of, in and to said placer mining ground as described in deed aforesaid, and as evidence of said transfer do deliver unto the said grantee the deed aforesaid.

"It is covenanted and agreed on the part of said grantee, in consideration of the foregoing premises, as follows, to wit:

"That he will incorporate, or cause to be incorporated, a company for the purpose of taking over, operating and developing said placer mining ground.

"That upon the perfecting of said incorporated company he will convey to it all right, title and interest in said placer mining ground.

"That thereafter he will devote his time, attention and ability to the successful promotion of said company, and the successful operating and developing of said placer mining ground.

"That in the event he is successful in the promotion of said company and placing said mining ground upon a paying basis, then and in that event, he will pay said grantors from the net proceeds of his individual interest as a stockholder in said company, the sum of forty thousand dollars, the said forty thousand dollars to be the first forty thousand dollars realized from his individual interest as stockholder of said company, whether it be from the sale of his personal stock or from dividends paid on said stock, and said money received from said interest, or by reason thereof, shall be paid immediately to said grantors to apply upon the payment of said forty thousand dollars.

"It is mutually understood and agreed between the parties hereto, and in consideration of the foregoing premises, that it is the intention to create a personal liability upon the grantee herein only in the event of his individual stock interest in the new company producing financial results as above stated, and it is further understood and agreed that, upon the final, full and complete payment of forty thousand dollars, all claims and demands of grantors will have been fully and completely satisfied.

"This agreement is binding upon the heirs, executors, and assigns of all parties hereto.

"In witness whereof, the grantors herein have hereunto set their corporate names and caused their corporate seals to be affixed by their duly authorized officer, and the grantee has set his name hereunto in his individual capacity, the day and year first above written.

"[Seal]   Nevada Mining and Exploration Co.,
        "By Morris Cohn, Pres.

"[Seal]   Virginia Tonopah Gold Dredging Co.,
        "By Morris Cohn, Pres.

        "J. H. Rae."

We submit that, from a comparison of the facts as stated in the original opinion, with which no fault is found, and the contract as executed, the plaintiffs did

not plead "the contract." On the other hand, they pleaded what they hoped to prove the real contract to be. In other words, they sought to vary the terms of the written contract. It was this desire which, to some extent, led to the predicament in which the plaintiffs have found themselves. The situation presented shows the evil of permitting a written contract to be pleaded according to the biased interpretation of one of the parties, rather than in hæc verba, and of leaving to the court the question of its interpretation. Hence we find the plaintiffs, under the original complaint, standing upon the contract as they interpreted it. According to the recital in the written agreement, Rae was desirous of purchasing the property from the plaintiff companies, upon the condition that he would organize a company to take it over, and would thereafter devote his efforts to promoting the company, and, if successful, would pay $40,000 upon the terms mentioned. Plaintiffs offered the written contract in evidence after Cohn had given testimony in support of his position as pleaded in the original complaint. No doubt, in conformity to a preconceived plan, the amendment to the complaint was sought so as to plead the written agreement, but at that time the evidence had gotten to the court and jury, which it was expected would show Rae to be a traitor to his partner and friend.

Now, let us consider the statement of counsel for petitioners that—

"The original complaint, of course alleged the contract and conveyance, because that is necessary in any action to rescind."

The logic of this statement is sound. The premise is bad because the original complaint did not plead "the contract." Rejecting the erroneous premise, and accepting the sound logic, what was the situation presented to the trial court? It was this: Evidence had been received, and properly and without objection, to establish the contract pleaded because it supported the allegations of the complaint which pleaded the contract according to its legal effect as interpreted by plaintiffs.

The result was that a jury and court already biased by much improper evidence, and a distorted presentation of the terms of the contract, could not readily winnow the chaff from the wheat when the written agreement was introduced in evidence. We find this statement in the petition for a rehearing:

"The contention that Cohn did not testify that the terms of the contract were not explained to him, of that he was misled: A consideration of this suggestion would lead us into a discussion of the merits of the case, which we will make under the next point. Suffice it to say at this point that we do not complain that the contract was not explained to him, but our complaint is that the purpose of the contract and conveyance was falsely represented to him. The complaint is, and the evidence is, that it was explained to him, and its purpose stated, and it is the falsity of that statement that we rely upon. We shall also point out that he did in effect testify that he was misled. Nor do we rely on the fact that Cohn did not read the contract. We offered no evidence to that effect. On cross-examination he was asked if he read it, and, as he did not, he so testified. He with equal candor testified that he had read it later. Our contention is that the contract is clearly subject to the construction that it was for the purpose represented, and it is well settled that when a party leads another to believe that an instrument means a certain thing he cannot claim the contrary."

1. Frankly, we are somewhat at a loss to know how to interpret the statement in view of the position taken by counsel in the brief upon which the case was submitted, and of the allegation in the amended complaint that Cohn did not read the written contract before he signed it. In the brief it is said that it is well settled that, when fraud is charged, a person may show that he did not read the instrument, and authorities are cited in support thereof. Pray, what was the purpose of the allegation that Cohn did not read the contract, and of the statement of the rule invoked, and the citation of the authorities? Can it be that plaintiffs, having once

shifted their position from that assumed in the original complaint, as to the terms of the contract, again seek to shift their position as to another phase of the case? Let this be as it may, we heartily agree with counsel in the statement quoted to the effect that it is necessary to plead the terms of the contract when it is sought to rescind it. And this rule properly applied means that the real contract must be pleaded, because a court cannot rescind a contract which was never entered into, but which is the figment of some one's mind. Before leaving this phase of the case it seems to us that counsel in their petition, while seeming to urge the proposition that the amendment did not change the theory of the plaintiffs, at other times seem to admit that it did. They say:

"The original complaint charged that the contract was entered into without any intention of performing it. The amended complaint alleged fraud in obtaining it. This was simply a broader allegation of fraud, and there is no inconsistency."

There can be no doubt about the meaning of this language. The first sentence construes the original complaint as we did in our former opinion, wherein we said:

"There is not a word or a line in the complaint indicating that plaintiffs sought to charge fraud, unless it be that Rae entered into the contract without intention to fulfil it. * * *"

And the second sentence is substantially what we said about the amendment in that opinion. The assertion that the amendment was simply a broader allegation of fraud, and that there is no inconsistency, falls of its own fallacy. We are not only of the opinion that plaintiffs sought to bring into the case an entirely new theory by the amendment, but we are unable to reconcile the statements contained in the petition for a rehearing.

2. Finally, if the purpose of this suit is to rescind the contract entered into, the complaint must allege the contract as it was executed, "because," as is said in the petition for a rehearing, "that is necessary in any action

to rescind." It was evidently this view which induced the application to amend the complaint, so as to charge "fraud" in obtaining it. The general rule is that, when parties have committed their agreements to writing, all oral negotiations and stipulations are embodied in the writing itself. Now, in this case, while it is contended that the fraud practiced was in obtaining the contract, the real matter relied upon goes to show an agreement different in terms from that signed by the parties. This is the veriest sophistry. To sanction this contention would be to permit the solemn written contract of the parties to be overthrown by showing that the parties agreed orally to something entirely at variance from the written contract. This cannot be. Of course, we know that there are instances in which a written contract will be canceled because of fraud inhering in its execution, but that will be allowed upon a very different state of facts from those here presented, and on a different theory. A contract obtained by duress or from an incompetent or by some fraudulent practice in inducing its execution is, among others, an instance of fraud inhering in the obtaining of the contract. In this case, however, where it is sought to show a contract contrary to the one reduced to writing, certain things must be alleged and proven, and, while we did not allude to them in the former opinion, we had in mind the case of Gage v. Phillips, 21 Nev. 150, 26 Pac. 60, 37 Am. St. Rep. 494, where it is said:

" 'It is well settled, by a long line of decisions of this court, that, when the parties reduce their contract to writing, all oral negotiations and stipulations are merged therein.' * * * The mere statement of the defendant 'that she did not know what she was signing, when she signed the bill of sale,' is no excuse in law. In order to be of any benefit to her, she should have set out in her answer that the paper introduced in evidence was obtained by misrepresentations of its contents, and that the misrepresentations were false. * * * "

When the matter was formerly before us, we were of the impression that the purpose of filing an amended

complaint was to allege that execution of the contract by the plaintiffs was obtained by false and fraudulent representations as to its terms. We concluded this to be the plaintiffs' theory because it alleged that Cohn, the president of plaintiff companies, who executed it in their behalf, did not read the contract, and for the further reason that it alleges that Rae falsely and fraudulently made certain representations, and for the further reason, as we have stated, respondents in their brief invoked a rule of law in support of that theory. Hence we announced the rule stated. If, however, we misconceived the theory of respondents, or if they have shifted their position so that it may be said that it is their contention that the fraud relied upon was in obtaining the contract, our views concerning amendments during the trial, as expressed in our original opinion, are equally applicable.

In our former opinion we did not discuss the evidence, but stated generally that there was no evidence to support the judgment. As we pointed out in the opinion, fraud is never presumed, but must be clearly and satisfactorily proven. There is such a paucity of evidence in this case which can be said to raise even a suspicion of fraud that we find it hard to decide just where to enter upon a consideration of it. If we correctly understand upon just what theories the plaintiffs rely to establish fraud, they are: (1) That Rae did not intend to comply with the terms of the contract when it was entered into; and (2) that its execution was procured by fraud.

Considering the latter contention first, it will be remembered that a contract for the sale of the properties involved was entered into in 1913, and that on November 11, 1914, the contract in question, which is set out herein, was executed. Mr. Cohn, after testifying relative to the contract of sale of 1913, was interrogated relative to the preliminaries to the execution of the contract assailed in this suit. Referring to the statements made by Mr. Rae as inducing the contract of November 11, 1914, Mr. Cohn testified:

"Q. And did he tell you what he came for and what proposition he had? A. Yes; the same thing as before; that he had a deal on for that; he didn't want to miss a deal by sending papers up and down, and I could trust him, and I always did, and he would protect me, and see I got my share, my one-half interest, and to sign some papers. That evening we went to Richards after I closed up. The papers were all ready made out, and laid there, and I signed them, and walked out with him."

Again he testified:

"Q. Well, how—will you tell me what occurred on that second visit? A. Well, the same story; he had a chance to sell it, and he didn't want to lose a chance; for me to sign; and I signed. I had such confidence in the man I never asked the second question.

"Q. Do you remember any particular points in the conversation? A. That is all he told me. He came in and told me he had a chance to dispose of the property, and for me to sign up some papers, and he wanted to know, if I remember right, when I can go. I always told him in the evening after I close up.

"Q. Well, where was that paper signed on the second visit? A. I think at Richards's office again.

"Q. Mr. Rae didn't have it prepared when he first saw you that day, did he? A. Sir?

"Q. Did Mr. Rae have the paper with him when you first saw him that day? A. Not that I know of.

"Q. He didn't show you any paper that day, did he? A. I don't think he did.

"Q. Did he tell you at that time he would go up to the lawyer's and get the paper drawn? A. If I recollect right, he said he was getting the papers drawn.

"Q. Well, you went up with him, didn't you? A. In the evening.

"Q. Yes. This paper which is dated November 11, 1914, you signed that without reading it, didn't you? A. Yes, sir. Hardly ever read the papers he showed me; always signed what papers he want me to sign, I had such confidence in him.

"Q. You are sure you signed that without reading it, didn't you? A. Yes.

"Q. Now, Mr. Cohn, on any of these visits, these papers were signed in Mr. Richards's office, weren't they? A. I believe so.

"Q. And the lawyer didn't read them at all? A. No.

"Q. Aloud? A. No."

The foregoing is substantially his entire testimony as to the fraud which it is contended was practiced in obtaining the contract. All that it amounts to is that a contract was sought by Rae different from the one which was executed. It amounts to nothing more than an attempt to vary the terms of the written agreement. We assumed in our former opinion that was the theory of plaintiffs, and pointed out that there was no testimony to the effect that the contract was not explained to Cohn before it was executed, and, further, that Cohn had possession of the contract for over six years, and did read it over a few months after it was executed, and was satisfied with it, and did not bring this suit until 1921. The fact that he was satisfied with its terms for nearly six years is pretty conclusive evidence that during that time he entertained no impression that it was obtained by fraud.

3. We come now to the contention that Rae, when he procured the execution of the contract, perpetrated a fraud, in that he did not intend to comply with its terms at the time it was executed. There is no evidence upon which such a contention can be maintained. We may observe that the contract executed is the most liberal one in its terms we have ever read; but, in view of the conditions which had prevailed for a number of years, we cannot say that there is anything in this fact to arouse suspicion. The uncontradicted testimony shows that Rae was indefatigable in his efforts to promote the company to which he conveyed the property; that he put into it many thousands of dollars of his own money, and sold stock in the company, which went into its development. He placed upon the property a drag-line dredge at great expense, which, apparently because it did not prove successful in producing dividends, is ridiculed by counsel for respondents. Every circumstance shows that Rae sought over a period of years, at

great outlay, to make a dividend producer out of the property. Nothing that Rae did after the contract was executed even suggests that he did not enter into the contract in good faith, but everything goes to just the contrary. But if we look to the terms of the contract itself, and the circumstances surrounding its execution, we must say there is nothing justifying the conclusion contended for. The terms of the contract are such that Rae had everything to gain and nothing to lose by complying with it in good faith. Since its execution, he has been put to a great expenditure of his time and money in an effort to successfully promote the company. He labored over a period of more than six years to make a success of the attempted promotion, without a murmur of protest from Cohn or any one else. Those were lean years—years lacking in promise, so far as practical results were concerned. Finally, a dredging outfit acquired control of an adjoining property, and thereafter entered into a contract with the defendant company which gave promise of great reward. Then it was that Cohn, after a period of more than six satisfied years, awoke to the alleged outrage. We can account for the verdict and judgment below on no other theory than the admission of improper evidence in the case. Certainly, there is no competent evidence to sustain the judgment.

The petition for a rehearing is denied.