A. P. SCOTT, APPELLANT, *v.*
E. L. CORD, RESPONDENT.

No. 4123

March 20, 1959                    336 P.2d 773

*John P. Thatcher*, of Reno, for Appellant.

*William J. Cashill* and *Robert Leland*, of Reno, for Respondent.

## OPINION

By the Court, McNAMEE, J.:

In the court below respondent Cord sued Bedford Wilshire Company, a Nevada corporation, on three promissory notes executed by the corporation to him, one dated February 28, 1950 in the sum of $150,000, one dated September 20, 1950 in the sum of $145,000, and one dated January 31, 1952 in the sum of $44,000. Each note recited that all of the corporation's interest in any land scrip and in any stock of other corporations was pledged as security for payment of the same. The prayer of the complaint asks for a sale of certain of the pledged assets with the proceeds therefrom to be applied toward payment of said notes.

Appellant Scott and one Maggart intervened as interested stockholders claiming that the meetings of the corporation's board of directors which authorized the execution of said notes were illegal, because only two of the three directors were present, the third director, John P. Thatcher, not having had any notice of said meetings. Scott further contends that even if the resolution passed at the meeting held December 5, 1949 was valid and would authorize the execution of the first two notes, it was legally insufficient to give the officers the power to pledge any corporate assets as security.

Scott further alleges that although he, Cord, and Maggart agreed among themselves that they would use their joint efforts to acquire additional land scrip for the benefit of all, that Cord acquired in his own name scrip representing land in excess of 3,300 acres.

We are not concerned with Maggart's complaint in intervention because his appeal herein was dismissed on stipulation.

For simplicity we shall hereafter refer to respondent Cord as Cord, Bedford Wilshire Company as the corporation, and appellant Scott as Scott.

Cord in answering Scott's complaint in intervention counterclaimed for the sum of $16,250, being one-half of the face value of two notes executed by Maggart and

payable to Cord and Scott, alleging that he had advanced to Maggart $32,500 for the two notes on the promise by Scott that if the loan were made and if Scott were named as one of the payees in the notes given therefor, he (Scott) would reimburse Cord one-half of said face value. It is further alleged that Maggart owes Cord and Scott the amount of said notes.

A pre-trial order approved by the interested parties determined the following facts:

In 1948 Maggart for a cash consideration transferred to Cord and Scott a 55 percent interest in certain land scrip and land scrip enterprises of which Maggart was sole or part owner. Thereafter on December 10, 1948 Cord, Scott, and Maggart entered into an agreement by which Cord and Scott were to transfer said 55 percent interest to Bedford Wilshire Company and Maggart was to transfer the 45 percent interest retained by him to said company with the understanding that 55 percent of the company's stock should issue to Cord and Scott and 45 percent to Maggart.

John P. Thatcher, Edward D. Neuhoff, and James P. Brice were elected directors of the corporation and in consideration of the transfer to the corporation of the scrip interests, the corporation issued to Cord 27,500 shares, to Scott 27,500 shares, and to Maggart 45,000 shares of its capital stock. Later Cord and Scott transferred their shares of stock to the First National Bank of Nevada as voting trustee, under a written agreement whereby neither could vote the stock unless both were in agreement.

The meetings of the board of directors authorizing the borrowing of the money and the execution of the said notes and the pledge of assets were held pursuant to the provisions of article II, section 6 of the bylaws[1], and in accordance therewith, director Thatcher was not informed of the place or time of the holding of said

[1]Section 6. Regular Meetings.—Regular meetings of the Board of Directors may be held without notice on any day at 10:00 o'clock a.m., except Sundays and holidays, at the office of the corporation in the City of Reno, State of Nevada, or at such other places and times as the directors shall determine, from time to time, by resolution, or as they might properly designate.

meetings other than the constructive notice furnished by the bylaws. Thatcher was not present at said meetings, he did not waive notice thereof, nor did he demand any notice of such meetings.

The court found from the evidence that the situation leading up to the execution of the three notes was as follows:

1. Cord advanced to the corporation at least the sum of $339,000.

2. All of the stockholders were in agreement that Cord should have first claim on the corporation's assets for any such advances.

3. The corporation accepted the benefits of such advances.

4. The corporate acts in authorizing the execution of the notes were actually within the knowledge and were with the consent of all the stockholders including appellant Scott.

5. All of the stockholders gave implied authority to a quorum of the board of directors (i. e., two directors) meeting in accordance with the said provisions of the bylaws relating to regular directors' meetings to perform corporate acts without actual notice to the third director of the time and place of such meetings.

From the stipulated facts and the evidence presented the trial court determined that the various agreements entered into by and between Cord, Scott, and Maggart were not intended to nor did they create the relationship of a joint venture, but rather a corporate relationship. With such fact established as its premise, the lower court then found that there was an agreement among Cord, Scott, and Maggart, being all of the stockholders of the corporation, that Cord was to have secured promissory notes for his advances, that such advances were made, that pursuant to such agreement of the stockholders the board of directors authorized the issuance of secured promissory notes to Cord for such advances, at regular meetings duly held, and that both the corporation and Scott were estopped from denying the validity of the notes and pledges. The court further found that the acquisition by Cord of scrip in his own

name was a transaction personal to him, said scrip having been purchased by him for his own account.

With respect to Cord's said counterclaim against Scott, the court found that the allegations of the counterclaim were true and that Scott was indebted to Cord in the sum of $16,250 thereunder.

The trial court thereupon entered judgment in favor of Cord and against the corporation in the sum of $339,-000 plus attorney fees in the sum of $30,000, and ordered foreclosure of the pledged assets[2]. Judgment was also entered in favor of Cord against Scott for $16,250 on said counterclaim.

As to controverted factual matters there was competent evidence to sustain the trial court's findings and with respect to the same we will not concern ourselves.

There remain, however, certain questions of law requiring determination.

That the corporation had power to authorize the issuance of the notes in the form as executed is not denied. It is appellant's contention, however, that the validity of the notes depends solely upon proper corporate procedure, and that the directors at the two meetings which authorized the execution of the notes acted improperly by failing to give actual notice of such meetings to director Thatcher.

The evidence reveals that at every meeting of the board of directors only two of the three directors had been present, that the minutes in each instance are silent as to actual notice to the absent director, and that this situation existed at the meeting of September 19, 1951, held after the alleged illegal meeting where the first two promissory notes to Cord were authorized, when directors Thatcher and Neuhoff were present, with Thatcher acting as chairman thereof, and at which director Brice was absent. No objection to this procedure was ever made by any of the stockholders or directors until after the commencement of this action, although such procedure was known to and carried on with the

[2]Counsel for appellant stated in his oral argument that said assets were sold for $2,500 at the foreclosure sale.

implied consent of all of the directors and stockholders.

Under such circumstances neither the corporation nor the stockholders will be permitted to attack the validity of the directors' meetings. Substantial authority supports this conclusion.

"* * * although directors or trustees act as a board at regularly called meetings of the corporation, those they represent may be estopped to question the authority of their officers when acting less formally, if there has been a custom or usage to act more informally (citing cases)." Superior Portland Cement v. Pacific Coast Cement Co., 33 Wash.2d 169, 205 P.2d 597, 621, rehearing denied.

In National Bank of Commerce of Seattle v. Puget Sound Biscuit Co., 61 Wash. 192, 112 P. 265, the court held that while corporate directors generally act as a board at regularly called meetings of the corporation, those they represent may be estopped to question the authority of their officers when acting less formally, if there has been a custom or usage to act more informally.

"The necessity for directors to act as a board and at a meeting is based upon the ground that they are not authorized to act in any other way than by meeting and conferring, and not on the ground they that cannot act in any other way; and the stockholders and the corporation, therefore, may be estopped to deny the validity of their action." 2 Fletcher, Cyc. Corp. (Perm. Ed.), sec. 394.

In Sharon Herald Co. v. Granger, 97 F.Supp. 295, 301 (W. D. Penn.), the court said: "The doctrine of permitting close corporations to act informally is recognized as an exception to the general rule that directors must act as a board at duly convened meetings. The exception is founded upon principles of equitable estoppel and is limited to instances in which the custom or usage of the directors is to act separately or informally and not as a board."

In Simonson v. Helburn, 198 Misc. 430, 97 N.Y.S.2d 406, 413, where the corporate bylaws provided that no play could be produced unless approved by a majority of

the board, and two of the three directors informally approved a play, the court said "* * * it has long been recognized in New York that the directors of a close corporation, when few in number, and in frequent contact with each other may act effectively without going through the useless formality of convening as a board."

Having concluded that neither the corporation nor Scott can attack the validity of the board meetings which purported to authorize the issuance of the three notes to Cord, we now consider Scott's contention that even if such proceedings were valid, the act of the officers in executing the particular notes exceeded the authority expressed in the resolutions.

At the meeting held on December 5, 1949, upon which is based the authority for the execution of the first two notes, the following resolution was adopted:

"BE IT RESOLVED that the Secretary of the corporation, be and he is hereby authorized and empowered to secure loans as may be necessary and required from time to time and upon such terms and conditions as he shall approve, and that the evidence of any such indebtedness or loans be signed by the President and Secretary of the corporation from time to time as may be necessary and required upon such terms and conditions and in such form as shall be first approved by the Secretary of the corporation."

The authority to execute the third note was based on the following resolution adopted at the meeting held January 30, 1952:

"BE IT RESOLVED that this corporation make, execute, and deliver to E. L. Cord a demand promissory note in the amount of Forty-Four Thousand Dollars ($44,-000.00), to cover money loaned to the corporation, said note to be in the usual form, and as collateral security therefor that the corporation pledge all of its interest in any land scrip or certificates owned directly or indirectly, and all corporate stocks owned by the company and other corporations; and

"BE IT FURTHER RESOLVED that the President and

Secretary of this corporation either acting jointly or severally, be and they are hereby authorized to execute and deliver said note."

Whether these resolutions would be broad enough in the absence of any agreement among all the stockholders, to authorize the officers to pledge all of the assets of the corporation as security for such loans, we do not have to decide. Under the facts of this case as found by the trial court, it had been agreed by and between all of the stockholders that Cord was to have a prior claim to the corporate assets for his advances, and such fact was known to Neuhoff, the secretary. The first resolution empowered him to execute the evidences of indebtedness in such form as he should approve. With his knowledge of this agreement of the stockholders it was proper for him under the circumstances to insert in the notes any terms which expressed such agreement. The second resolution expressly provides for the pledge of the corporate assets.

But even so appellant contends that under neither resolution were the officers empowered to insert in any of the notes a provision for attorney fees, and consequently the allowance of $30,000 attorney fees was error.

In the case of Defanti v. Allen Clark Co., 45 Nev. 120, 198 P. 549, this court held that the terms of a resolution authorizing a mortgage should be as broad as the mortgage itself and that when the resolution is silent as to attorney fees, a provision for attorney fees in the note and mortgage executed pursuant to such a resolution is invalid.

Because of the nature of the resolutions in the present case, (the resolution of December 5, 1949 providing that "the secretary of the corporation be and he is hereby authorized and empowered to secure loans as may be necessary and required from time to time and upon such terms and conditions as he shall approve," and the resolution of January 30, 1952 authorizing the

note "to be in the usual form[3]") we are not inclined to apply the rule so expressed in the Defanti case, supra, to a situation where the authority to provide for attorney fees can be implied from the particular wording of a resolution.

The reasonableness of the allowance is not questioned, because the parties had stipulated that the court could determine what would be reasonable as attorney fees.

The other issues raised by appellant require brief comment.

It was stipulated that director Dunn (successor to director Brice), director Neuhoff, and director Brice, in so far as said directors were connected with any of the transactions involved in this litigation, were related to Cord as follows: Dunn was an employee of Cord, Neuhoff was an attorney at law on retainer from Cord, and Brice was an attorney at law employed by Neuhoff in connection with various scrip matters. The evidence, however, fails to show that said directors were subject to Cord's domination and control as officers and directors of the corporation. At any rate there is nothing in the record to convince us to the contrary. Their actions and resolutions of which Scott now complains were effected pursuant to the agreement of all the stockholders as found by the trial court.

Scott has assigned as error the action of the trial court in denying his motion to vacate and set aside the judgment against him in the sum of $16,250. This motion was based on the grounds of his "mistake, inadvertence, surprise, and excusable neglect," in failing to plead the statute of limitations as a defense. Evidence was introduced in support of and in opposition to said motion. The court exercised its discretion in determining from the pleadings and evidence before it on said

---

[3]It is to be noted that the words "usual form" very well could mean not only the form customarily used for promissory notes today which contain provisions for attorney fees, but also the form theretofore used by the corporation for its said notes of February 28, 1950 and September 20, 1950.

motion the law and facts contrary to the contentions of Scott which it had the power to do under Rule 60(b) NRCP. We find no abuse of such discretion.

For the reasons herein stated the judgment in favor of Cord and against the corporation, the judgment in favor of Cord against Scott, and the order denying Scott's motion for new trial are affirmed.

MERRILL, C. J., and BADT, J., concur.