CARSON MEADOWS INCORPORATED, FORMERLY A NEVADA CORPORATION, AND THEODORE GOLDBECK AND JUNE PIEDMONT, INDIVIDUALLY, APPELLANTS, v. ARTHUR E. PEASE AND DOROTHY PEASE, HUSBAND AND WIFE, RESPONDENTS.

No. 7552

March 27, 1975          533 P.2d 458

*Carl F. Martillaro* and *Arthur J. Bayer, Jr.,* of Carson City, for Appellants.

*Daniel R. Walsh,* of Carson City, for Respondents.

# OPINION

By the Court, THOMPSON, J.:

This is an action to recover damages for fraud. It was commenced by Arthur Pease and his wife, Dorothy, against Carson Meadows Incorporated and Theodore Goldbeck and June Piedmont, individually. Goldbeck and Piedmont, respectively, were the president and vice-president of the corporation and directors as well. It is asserted that they wholly controlled the corporation as its alter ego and, therefore, are jointly and severally liable for the corporation's indebtedness to the plaintiffs.

The charge of fraud rests mainly on the proposition that Goldbeck and Piedmont, from time to time, induced the plaintiffs to loan various sums of money to the corporation, and to invest therein as minor stockholders, all upon false representations that the moneys so loaned and invested would be used for corporate purposes, and that the corporation was at all relevant times financially sound.

From the outset, the corporate properties were heavily encumbered. It soon experienced difficulty in meeting current operating expenses. Lending institutions holding first deeds of trust on the real property foreclosed to satisfy the corporate obligations owing them. The charter of Carson Meadows Incorporated was revoked on March 4, 1968.

The district court ruled for the plaintiffs and assessed judgment against Goldbeck and Piedmont jointly and severally. Judgment was not entered against the defunct corporation.

Several assigned errors are tendered by this appeal, and we turn to consider those which we deem worthy of discussion.

1. The corporation signed promissory notes secured by second deeds of trust for several of the loans made by the plaintiffs to it. And, of course, the corporation issued its stock certificate to the plaintiffs for their investment in the corporate enterprise.

The district court disregarded the corporate entity and imposed individual liability upon Goldbeck and Piedmont. Whether this was proper first must be determined.

The alter ego doctrine may be applied when the corporation is influenced and governed by the person or persons asserted to be its alter ego; there is such unity of interest and ownership that one is inseparable from the other; and adherence to the fiction of separate entity would sanction a fraud or promote injustice. McCleary Cattle Co. v. Sewell, 73 Nev. 279, 317 P.2d 957 (1957); North Arlington Med. v. Sanchez Constr., 86 Nev. 515, 471 P.2d 240 (1970); Caple v. Raynel Campers, Inc., 90 Nev. 341, 526 P.2d 334 (1974).

With regard to Goldbeck there is substantial evidence to support the trial court's view that he was the alter ego of the corporation. By way of summary only, it was shown that as president he governed the corporate enterprise. Legal procedures normally incident to the operation of a corporation do not appear to have been honored at all. If the directors of the corporation met to conduct its business affairs, the record does not reveal it. If corporate minutes were kept and necessary resolutions passed, the record does not show it. Goldbeck commingled corporate funds with his own. He treated some corporate assets as his own and manipulated them to suit himself. He appears to have negotiated all of the corporate business, and truly may be said to have used the corporate shell as a conduit for his individual enterprise.

The trial court erred, however, in deciding that June Piedmont also was the alter ego of the corporation. She did not govern the corporate business. Although nominally its vice-president, secretary and a director, her true function was that of office manager and secretary to Goldbeck. In that capacity she received money, deposited it, and, with Goldbeck, signed checks. She sometimes prepared promissory notes and trust deeds upon Goldbeck's instructions, and furnished information to the accountant. Her position with regard to the corporation simply does not satisfy the mentioned requisites for the application of the alter ego doctrine to her. Consequently, she may not be held individually liable to the plaintiffs on the theory that she was the alter ego of the corporation.

2. The appellants contend that the finding of fraud is not supported by the evidence. Of course, it was the plaintiffs' burden to support their contention of fraud by clear and convincing proof. Our task is to examine the evidence in the light

of that standard. Clark Sanitation v. Sun Valley Disposal, 87 Nev. 338, 487 P.2d 337 (1971). If no more than a paucity of evidence exists to support the charge of fraud, we will not hesitate to reverse. Nevada Mining & Exp. Co. v. Rae, 47 Nev. 182, 223 P. 825 (1924); Clark Sanitation v. Sun Valley Disposal, supra.

Here again, we must distinguish between the activity and conduct of Goldbeck and Piedmont, each of whom was found to be liable. The plaintiffs were induced to loan money to the corporation and invest therein by Goldbeck. It was he who carried on all meaningful negotiations with the plaintiffs. As already stated, Piedmont's true function was that of an office manager and secretary to Goldbeck. As to her participation, there exists no more than a paucity of evidence of fraud, and the judgment entered against her on that basis must be set aside.

With regard to Goldbeck, however, the evidence of fraud on his part must be considered in the light of the nature of the transactions involved. Most, but not all of the dealings between the plaintiffs and Goldbeck concerned discounted loans to the corporation for which the corporation gave in return promissory notes secured by second deeds of trust. These are listed in footnote 1 below. The district court would not allow the

---

[1]1. February 25, 1965—Arthur Pease loaned the corporation $6000 and received in return a corporate promissory note for $8000 with interest at eight percent, secured by a second deed of trust. Principal and interest payable in monthly installments of $75 or more beginning March 25, 1965, and continuing until paid in full, or until February 25, 1970.

2. June 9, 1965—Arthur Pease loaned the corporation $7500 and received in return two corporate promissory notes for $5000 each with interest at eight percent, secured by second deeds of trust. Principal and interest paid in monthly installments of $75 or more beginning July 9, 1965, until June 9, 1970.

3. October 18, 1965—Arthur Pease loaned the corporation $4800 and received in return a corporate promissory note for $6400 with interest at eight percent, secured by a second deed of trust. Principal and interest paid in monthly installments of $125 or more beginning November 18, 1965, until October 18, 1967.

4. October 25, 1965—Dorothy Pease loaned the corporation $3000 and received in return a corporate promissory note for $4000 with interest at eight percent, secured by a second deed of trust. Principal and interest paid in monthly installments of $65 or more beginning November 25, 1965, until October 25, 1967.

5. March 16, 1966—Arthur and Dorothy Pease loaned the corporation $2100 and received in return a corporate promissory note for

plaintiffs to submit proof regarding the financial condition of the corporation at the various times these loans were made. They wished to show that, although Goldbeck represented the corporation to be financially sound and needed the several amounts loaned only to meet current operating expenses, the corporation was in fact financially distressed, and unable to pay judgments and tax liens against it. Such evidence was tendered to support their charge of fraud on the part of Goldbeck. The court, in disallowing such proof, reasoned that the loans were made at a discount after the plaintiffs had inspected the property and the security to be received therefor, and that the several transactions were entered into between businessmen fully aware of possible consequences.

■■■■■■

By reason of the court's preclusive ruling, evidence of fraud on the part of Goldbeck as to the transactions listed in footnote 1 is scanty indeed. This, however, is of no moment. Goldbeck, as the alter ego of the corporation, is personally liable to pay the promissory notes without regard to fraud. The first trust deeds were foreclosed at a trustee's sale, and the second deeds of trust held by the plaintiffs were thereby rendered valueless. Cf. McMillan v. United Mortgage Co., 82 Nev. 117, 412 P.2d 604 (1966). Foreclosure of the first trust deeds did not extinguish Goldbeck's liability upon the notes secured by the second trust deeds. Sims v. Grubb, 75 Nev. 173, 178, 336 P.2d 759 (1959).

■■■■■■

It is apparent, however, that the several loans to the corporation called for usurious interest. Although a permissible interest rate of eight percent per annum was specified in each instance, the money actually loaned was seventy-five percent of the face amount of the promissory notes given in return. Consequently, the lenders were to receive, in addition to the interest specified, twenty-five percent more than the amounts actually loaned. In the circumstances of this case, such additional sum must be treated as interest, and when so treated,

$2800 with interest at eight percent, secured by a second deed of trust. Principal and interest paid in monthly installments of $35 or more beginning April 16, 1966, until March 16, 1969.

6. January 19, 1966—Aubrey and Lucille Blake, friends of the plaintiffs, loaned the corporation $2250 and received in return a corporate promissory note for $3000, purportedly secured by a deed of trust. Principal and interest paid in monthly installments of $45 or more beginning February 19, 1966, until January 19, 1969. The Blakes have assigned their cause of action on the note to the plaintiffs.

calls for a rate of return in excess of twelve percent per annum, and is usurious. NRS 99.050; Pease v. Taylor, 88 Nev. 287, 496 P.2d 757 (1972). Consequently, no interest is recoverable, Pease v. Taylor, supra.

With respect to the mentioned promissory notes, the district court gave judgment to the plaintiffs for the face amount thereof together with interest, less the sums paid thereon. This was error, and we modify that aspect of the judgment to allow the plaintiffs to recover only the amounts actually loaned, $25,650, less the amounts paid thereon, which the record shows to be $3,620.[2]

Other transactions between the plaintiffs and Goldbeck also occurred. The trial court found that the plaintiffs were induced to enter into them by the false representations of Goldbeck. We allude to them only briefly.

On December 1, 1965, the plaintiffs purchased 2500 shares of the capital stock of the corporation for $25,000. The record may be read to show that they were induced to do so by Goldbeck's representations that, while the corporation was financially sound, the money was needed to assist in obtaining a construction loan for a golf course and would be used for that purpose. Some of that money was deposited by Goldbeck to his personal account. Within two months, the holder of the first trust deed on the corporate realty gave notice of breach and of its election to sell. In another seven months, the corporation filed a petition for reorganization with the federal court alleging that it was unable to pay its obligations.

On or about May 3, 1966, Goldbeck induced Arthur Pease to loan $2,961.50 to the corporation upon the representation that Emile and Helen Rabe, who were purchasing a home from the corporation, would give Pease a promissory note for $3,950, secured by a second deed of trust. For reasons unnecessary to

---

| [2]Note of February 25, 1965— | $6,000. |
| Notes of June 9, 1965— | 7,500. |
| Note of October 18, 1965— | 4,800. |
| Note of October 25, 1965— | 3,000. |
| Note of March 16, 1966— | 2,100. |
| Note of January 19, 1966— | 2,250. |
| | |
| Total loaned: | $25,650. |
| Amount paid: | 3,620. |
| | |
| Due: | $22,030. |

relate Pease never received the promised note and trust deed. However, the corporation did not return the $2,961.50.

The court's finding of fraud with respect to the transactions just mentioned is sustained by the record.

3. This suit was commenced on September 18, 1970. It is contended that the several claims for relief asserted are barred by limitations. The contention is without merit.

Default did not occur on any of the promissory notes mentioned in footnote 1 until May 1966. Consequently, the bar of limitations would not arise until May 1972. NRS 11.190(1)(b). With respect to the claims resting upon fraud, the record may be read to support the finding below that fraud was not discovered until 1969. The bar of limitations applicable to those claims would not arise until 1972. NRS 11.190(3)(d).

4. The lower court awarded attorneys' fees of $15,000. At first blush it would appear that since the plaintiffs recovered more than $10,000 the award was improper. NRS 18.010. That statute, however, does not preclude reasonable fees when contractually provided for even though the recovery may be greater than $10,000. Scott v. Cord, 75 Nev. 179, 336 P.2d 773 (1959).

The promissory notes mentioned in footnote 1 provide for reasonable attorneys' fees, and such fees may be recovered notwithstanding the fact that the notes call for usurious interest. Pease v. Taylor, supra, at 295. Since judgment for the plaintiffs with regard to such notes must be modified (see footnote 2), a reasonable attorney's fee may be fixed with that recovery in mind, and we remand to the district court for that purpose. The award of $15,000 is nullified.

5. Other assigned errors have been considered and are without merit.

Accordingly, we: 1. Affirm the judgment for Arthur and Dorothy Pease against Goldbeck with respect to the $25,000 invested in the corporate enterprise, and also with respect to the Rabe transaction.

2. Affirm the judgment for Arthur Pease against Goldbeck upon the Wesley Taylor notes (not heretofore mentioned), since Goldbeck has admitted his liabilty to Pease thereon.

3. Modify the judgment for the plaintiffs against Goldbeck upon the promissory notes specified in footnote 1 as indicated herein.

4. Reverse the judgment in favor of the plaintiffs and against June Piedmont.

5. Set aside the award of attorneys' fees in the amount of $15,000 and remand to the district court to fix a reasonable attorney's fee in accordance with this opinion.

GUNDERSON, C. J., and BATJER, ZENOFF, and MOWBRAY, JJ., concur.